1998 ND 151

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Kevin MESSNER, Defendant and Appellant.**

**Criminal No. 980040.**

Supreme Court of North Dakota.

Aug. 18, 1998.

Terence P. Devine, State's Attorney, Lakota, for plaintiff and appellee.

Richard Edward Edinger, Moorhead, for defendant and appellant.

MESCHKE, Justice.

[¶ 1] Kevin Messner appealed a criminal judgment on jury verdicts finding him guilty of two counts of gross sexual imposition. We hold the trial court did not breach the Confrontation Clause nor abuse its discretion in admitting statements by a five-year-old victim to an interviewer and in allowing related evidence. We affirm.

I

[¶ 2] On May 3, 1996, the mother of five-year-old A.M. contacted the sheriff of Nelson County to report her suspicions A.M. had been sexually abused. On several occasions, she had witnessed eight-year-old J.M. behaving inappropriately with little girls including A.M. The mother was primarily concerned with stopping the sexual misconduct of J.M., but she also suspected Kevin Messner.

[¶ 3] On May 14, 1996, Randy Slavens, a social worker for the North Dakota Department of Human Services, videotaped his interview with A.M. This was the first interview of A.M. During the interview, when asked if anybody touched her in the genital

area, A.M. said "Kevin does it." Through the use of drawings and anatomically correct dolls, A.M. described in detail being sexually abused by J.M. and Messner.

[¶ 4] Messner was tried by a jury in November of 1997. A.M.'s mother testified about several incidents she had seen. Once, she saw Messner moving A.M. back and forth upon himself in a sexual manner. Another time, she caught Messner with a hand down A.M.'s pants. Another time still, she found A.M. and J.M. naked and in physical contact with each other in Messner's home after Messner denied the children were there.

[¶ 5] On objection by Messner, the court kept the jury from seeing the videotape of A.M.'s interview. The trial court also refused to allow testimony by a relative of the victim and by another social worker about unrecorded out-of-court statements by A.M., but the court allowed the interviewer to tell the jury what A.M. told him during the taped interview about being sexually abused by Messner. At trial, A.M., who was then six, gave limited and hesitant testimony. Her testimony was somewhat confused and inconsistent, but confirmed she had been sexually abused by Messner.

[¶ 6] The defense subpoenaed Dr. Miller, a pediatrician, to testify by telephone. He had examined A.M. on November 21, 1996, and he testified her condition was completely normal. However, on cross-examination, he testified the results of the examination were completely compatible with the type of abuse described by A.M.

[¶ 7]The jury returned verdicts finding Messner guilty on two counts of gross sexual imposition. Messner appealed the convictions.

II

[¶ 8] Messner contends the trial court committed reversible error by allowing the social worker to testify about what A.M. said when he interviewed her. Messner argues his federal constitutional rights were violated because the Confrontation Clause of the Sixth Amendment to the Constitution of the United States, applicable to the states through the Fourteenth Amendment, declares "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." [1] As *State v. Wicks*, 1998 ND 76, ¶ 17, 576 N.W.2d 518, explained, our standard of review for a claimed violation of a constitutional right is de novo.

[¶ 9] In this case, the Confrontation Clause was satisfied because the declarant, A.M., was available for cross-examination and actually testified in court. *See California v. Green*, 399 U.S. 149, 157–64, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). When a child-victim is available at trial for cross-examination about her prior out-of-court statements, the Confrontation Clause is not violated by admission of her prior statements. *Johnson v. Lockhart*, 71 F.3d 319, 320–21 (8th Cir. 1995); *Dolny v. Erickson*, 32 F.3d 381, 385–86 (8th Cir.1994); *United States v. Tome*, 3 F.3d 342, 351–52 (10th Cir.1993); *United States v. Spotted War Bonnet*, 933 F.2d 1471, 1473–74 (8th Cir.1991); *Story v. Collins*, 920 F.2d 1247, 1255 (5th Cir.1991). *State v. Rojas*, 524 N.W.2d 659, 664 (Iowa 1994), explained: "Although mere physical presence of the declarant is not sufficient to satisfy the Constitutional requirement, a perfectly satisfactory cross-examination is not required."

[¶ 10] "[T]he question is whether there is 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Spotted War Bonnet*, 933 F.2d at 1474. "The concerns animating the Confrontation Clause are satisfied as long as the defendant has the opportunity to expose weaknesses in the witness' testimony." *Tome*, 3 F.3d at 352. *Tome* at 352 (citing *United States v. Owens*, 484 U.S. 554, 559–60, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988) and *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985)), added: "Forgetfulness, for example, does not render cross-examination con-

---

1. Messner does not cite or rely on the Declaration of Rights in the North Dakota Constitution. Nevertheless, the right to confront witnesses is also of constitutional magnitude under N.D. Const. art. I, § 12. *State v. Haugen*, 458 N.W.2d 288, 291 (N.D.1990).

stitutionally infirm because the defense can use the witness's poor memory and trial demeanor to attack the witness's credibility."

[¶ 11] Here, Messner had the opportunity for effective cross-examination. The incidents with him happened more than a year and a half before trial. For her age, A.M. testified in open court as well as could be expected about a subject so personal and sensitive as sexual abuse. In his cross-examination of her, Messner tested whether A.M. had been coached, and he established A.M. did not remember very much. We conclude Messner's confrontation rights were not violated.

[¶ 12] Even if A.M. were deemed unavailable for cross-examination, it does not necessarily follow Messner's confrontation rights were compromised. The Confrontation Clause does not require an accused be given the absolute right to confront and cross-examine an adverse witness. *See Idaho v. Wright*, 497 U.S. 805, 813–14, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). The United States Supreme Court has "consistently held that the Clause does not necessarily prohibit the admission of hearsay statements against a criminal defendant, even though the admission of such statements might be thought to violate the literal terms of the Clause." *Id.* at 813, 110 S.Ct. 3139. In *Wright*, 497 U.S. at 814–16, 110 S.Ct. 3139, the Court explained the hearsay statements of an unavailable child-victim of sexual abuse may be admissible under the Confrontation Clause, if the statement bears adequate indicia of reliability upon a showing of particularized guarantees of trustworthiness. We look at that subject next.

### III

[¶ 13] Messner argues A.M.'s statements to the social worker were inadmissible as hearsay. Generally, we review a trial court's evidentiary rulings under an abuse of discretion standard. *State v. Christensen*, 1997 ND 57, ¶ 5, 561 N.W.2d 631. A trial court abuses its discretion when it acts arbitrarily, capriciously, or unreasonably, or if it misinterprets or misapplies the law. *Id.* at ¶ 5.

[¶ 14] A young child's statement about sexual abuse can be admissible under one of the many exceptions to the general rule against hearsay evidence:

*Child's Statement About Sexual Abuse.* An out-of-court statement by a child under the age of 12 years about sexual abuse of that child or witnessed by that child is admissible as evidence (when not otherwise admissible under another hearsay exception) if:

(a) The trial court finds, after hearing upon notice in advance of the trial of the sexual abuse issue, that the time, content, and circumstances of the statement provide sufficient guarantees of trustworthiness; and

(b) The child either:

(i) Testifies at the proceedings; or

(ii) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement.

N.D.R.Ev. 803(24). Messner contends A.M.'s statements to the social worker lacked sufficient guarantees of trustworthiness for admissibility under this exception. We disagree.

[¶ 15] In assessing the admissibility of a child's hearsay statement about sexual abuse under the Confrontation Clause, the United States Supreme Court has identified several factors to consider in deciding whether there are particularized guarantees of trustworthiness. Factors to consider include spontaneity and consistent repetition, the mental state of the declarant, the use of terminology unexpected of a child of similar age, and a lack of motive to fabricate. *Idaho v. Wright*, 497 U.S. at 821–22, 110 S.Ct. 3139. These factors are also the relevant ones under N.D.R.Ev. 803(24) for deciding whether A.M.'s statements have sufficient guarantees of trustworthiness.

#### A. Spontaneity and Consistent Repetition

[¶ 16] When asked if anybody touched her in the genital area, A.M. unexpectedly said "Kevin does it" without having been asked what Messner had done. Before her interview with the social worker, no one had

questioned A.M. about Messner. A.M. had not told her mother about the abuse.

[¶ 17] During the interview, A.M. repeatedly said Messner gave her bad touches and he was not her friend. There were some inconsistencies but, through the use of anatomical dolls, A.M. described in detail being sexually abused by Messner. A.M. also consistently differentiated between J.M. and Messner.

### B. Mental State of the Declarant

[¶ 18] The videotape of A.M.'s interview depicted an alert five-year-old giving intelligent and candid, although sometimes hesitant, answers. She appeared animated during the videotaped interview, except when she withdrew into a fetal position when discussing intimate body parts. A.M. was more descriptive and assertive when using dolls, and A.M. insisted on using a different male doll to distinguish Messner from J.M. She corrected the social worker when he confused Messner with J.M.

### C. Use of Terminology

[¶ 19] The terminology used by A.M. in describing the sexual abuse was what one would expect from a five-year-old. She evidenced shyness when referring to human genitalia by whispering to the social worker when identifying those body parts. She refused to use what she considered to be bad words. On her own, through the use of anatomical dolls, she demonstrated sexual awareness that one would not expect a five-year-old to have.

### D. Lack of Motive to Fabricate

[¶ 20] Finally, there was no evidence of a motive to fabricate by A.M. The video made apparent sexual abuse was not something A.M. wanted to discuss, and she demonstrated emotional hurt and discomfort when revealing the abuse. Messner has not argued A.M. had reason to fabricate her story.

[¶ 21] We conclude the trial court did not abuse its discretion in deciding A.M.'s statements had sufficient guarantees of trustworthiness to allow the social worker to testify about what A.M. told him.

### IV

[¶ 22] Messner contends the trial court abused its discretion by allowing the social worker to state his opinion to the jury about what A.M. meant by a "bad touch on the head." Several times during the interview, A.M. said Messner gave bad touches on the head and that she "pushed him up." The social worker told the jury he believed A.M. was describing having her head held down for the purpose of oral sex.

[¶ 23] Opinion testimony of a lay witness is admissible if "rationally based on the perception of the witness and ... helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." N.D.R.Ev. 701. The social worker observed A.M.'s manner and how she gestured when making the statements about a bad touch on the head. The social worker's personal perception of A.M.'s statements and conduct was helpful to the jury's understanding of what A.M. described.

[¶ 24] Even if the trial court erred by allowing the social worker to explain his perceptions about what A.M. was communicating, it was merely cumulative to other more direct evidence. The social worker testified to other statements by A.M. where she directly described being sexually abused by Messner. The erroneous admission of evidence that is merely cumulative to other properly admitted evidence is not prejudicial, does not affect substantial rights of the parties and, accordingly, is harmless error. *State v. Burgard,* 458 N.W.2d 274, 279 (N.D. 1990); *see also* N.D.R.Crim.P. 52(a). Thus, if any error occurred here, it was harmless.

### V

[¶ 25] Messner contends the trial court abused its discretion by allowing Dr. Miller to testify to this:

Q .... were the results of the exam of [A.M.] completely compatible with the type of abuse described by [A.M.]?

. . . .

[DR. MILLER]: The type of abuse described by the child to the social workers, the people who had interviewed her, was compatible with her normal exam.

Messner contends this testimony was inadmissible hearsay.

[¶ 26] However, under N.D.R.Ev. 703, the facts relied upon by an expert in forming an opinion need not be ones otherwise admissible in evidence.[2] In addition, most courts agree an expert should be permitted to describe otherwise inadmissible hearsay relied upon in order to give the basis for the opinion. 29 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 6273, at 317 (1997); *see also United States v. Farley*, 992 F.2d 1122, 1125 (10th Cir. 1993). In *Farley*, a psychologist relied upon a child victim's hearsay statements in forming his opinions, and the court said Fed. R.Ev. 703 allowed the expert to testify about that information, even if the evidence would not otherwise have been admissible.[3]

[¶ 27] In this case, Dr. Miller did not testify about any abuse described by A.M., but simply referred to the fact A.M. had described being abused. The social worker had already testified about the statements made by A.M. We conclude the trial court did not abuse its discretion in allowing this testimony by Dr. Miller.

## VI

[¶ 28] Finally, Messner contends he was denied his Sixth Amendment right to effective assistance of counsel. As applied to the states through the Fourteenth Amendment, the Sixth Amendment guarantees an accused effective assistance of counsel. *State v. Touche*, 549 N.W.2d 193, 195 (N.D.1996); *see also Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As *State v. Foster*, 1997 ND 8, ¶ 18, 560 N.W.2d 194, explained: "In order to establish ineffective assistance of counsel, defendant must prove that his counsel's performance was defective and that his defense was prejudiced by the proven defects."

[¶ 29] Here, Messner claims defective assistance of counsel on a direct appeal

from the trial. "We have repeatedly stated that a claim of ineffective assistance of counsel at trial should not be brought on direct appeal, but rather through a post-conviction relief proceeding under N.D.C.C. chapter 29–32.1." *State v. Antoine*, 1997 ND 100, ¶ 9, 564 N.W.2d 637. "A post-conviction relief proceeding allows the parties to fully develop a record on the issue of counsel's performance and its impact on the defendant's case." *Id.* at ¶ 9. As we explained in *Antoine* at ¶ 9 (quoting *State v. McDonell*, 550 N.W.2d 62, 65 (N.D.1996)): "Unless the record affirmatively shows ineffectiveness of constitutional dimensions, parties must provide this Court with some evidence in the record to support their claim. The representations and assertions of counsel are not enough."

[¶ 30] Messner bases his claim of defective assistance on the failure of his attorney to subpoena Dr. Miller to testify in person, rather than by telephone. This allegation does not overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See State v. Kunkel*, 366 N.W.2d 799, 802 (N.D.1985). As a matter of tactics, Messner's counsel may have felt he had a better chance of obtaining better cooperation and more favorable testimony from Dr. Miller by making it convenient for him to testify by telephone. We conclude Messner has not proved he was denied effective assistance of counsel at his trial.

## VII

[¶ 31] We affirm the jury verdicts and the criminal convictions of Messner.

[¶ 32] VANDE WALLE, C.J., and MARING, NEUMANN and SANDSTROM, JJ., concur.

---

**2.** Rule 703, N.D.R.Ev., directs:
  The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

**3.** Rule 703, N.D.R.Ev., is identical to Fed.R.Ev. 703.