1999 ND 217

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Leonardo VELASQUEZ, Defendant and Appellant.**

**Nos. 990097, 990098.**

Supreme Court of North Dakota.

Dec. 1, 1999.

Stephen J. Rice, State's Attorney, Grafton, ND, for plaintiff and appellee. Submitted on brief.

Robert J. Woods, Forest River, ND, for defendant and appellant. Submitted on brief.

VANDE WALLE, Chief Justice.

[¶ 1] Leonardo Velasquez appealed from a conviction for two counts of delivery of a controlled substance. We conclude Velasquez's rights to a fair trial were not violated and we affirm.

[¶ 2] Rosvel Gonzalez, after being charged with drug-related felonies, agreed to work with police as an informant. Gonzalez phoned Velasquez and they agreed to exchange drugs for money. Gonzalez was to pay $2,800 to Velasquez for one ounce of cocaine and one ounce of methamphetamine. After phoning Velasquez, Gonzalez notified police he was arranging a purchase of drugs and the police gave him $2,800 and placed a transmitter on him. On May 28, 1998, Gonzalez exchanged the money for drugs at Velasquez's home. Gonzalez notified the authorities of this exchange and Velasquez was arrested. At the jury trial, Gonzalez testified Velasquez sold him methamphetamine and cocaine at Velasquez's home. Velasquez was found guilty.

I

[¶ 3] Velasquez argues the district court erred in denying his demand for change of judge prior to trial. The demand for change of judge was denied because it was untimely. Section 29–15–21(2), N.D.C.C., reads:

The demand [for change of judge] is invalid unless it is filed with the clerk of the court not later than ten days after the occurrence of the earliest of any one of the following events:

a. The date of the notice of assignment or reassignment of a judge for trial of the case;

b. The date of notice that a trial has been scheduled; or

c. The date of service of any ex parte order in the case signed by the judge against whom the demand is filed.

On October 8, 1998, the district court gave notice to the parties of the judge assigned to the case, triggering subsection (2)(a).

Velasquez did not demand a change of judge until November 13, 1998, well after the 10–day period had elapsed. Velasquez claims the 10–day period cannot begin to run until a trial is scheduled. This argument is unpersuasive. Subsection (2)(a) of the statute makes no reference to a case being scheduled on the calendar; it only requires a judge to be assigned for trial of the case to engage the ten day period in which to make the demand for a change of judge. In some instances a judge is initially assigned to a case only for the purpose of the preliminary hearing. However, here the parties were notified on October 8, 1998 of the judge assigned to the case "until its completion." This necessarily includes trial of the case. Thus, Velasquez's demand for change of judge was untimely according to N.D.C.C. § 29–15–21(2)(a). *See Adolph Rub Trust v. Rub*, 473 N.W.2d 442, 445 (N.D.1991) (stating where demand for change of judge was in excess of ten days after the date of notice, the demand was untimely pursuant to N.D.C.C. § 29–15–21(2)(b)).

II

[¶ 4] Velasquez offers two reasons why he should not have to pay $2,800 in court-ordered restitution for the fruits of his crime. First, he argues restitution only applies to monetary losses or damages that occur after the commission of the offense. He cites N.D.C.C. § 12.1–32–02(1)(e), which requires "[r]estitution for damages resulting from the commission of the offense." The words "resulting from" in the statute, Velasquez argues, cover only losses occurring after delivery. Velasquez claims any monetary losses here occurred before the commission of an offense, that is the money was transferred before the drugs. Words in a statute are to be understood in their ordinary sense, that is the meaning an ordinary person could get from reading the section. *See* N.D.C.C. § 1–02–02; *Wills · v. Schroeder Aviation, Inc.*, 390 N.W.2d 544, 545–46 (N.D.1986). The words "resulting from" in an ordinary sense mean "as a consequence

of." *See* The American Heritage College Dictionary 1164 (3d ed.1997) (defining "result" as "[t]o come about as a consequence").

[¶ 5] Second, Velasquez argues he cannot be ordered to pay restitution because the drug task force is not a victim as defined by law. Other courts have held drug task forces cannot be given restitution because they are not victims as the term is defined. *See State v. Murray,* 529 N.W.2d 453 (Minn.App.1995); *State v. Dillon,* 529 N.W.2d 387 (Minn.App.1995); *People v. Evans,* 122 Ill.App.3d 733, 78 Ill.Dec. 50, 461 N.E.2d 634 (1984). In this state, however, the legislature has not so circumscribed who may and who may not suffer damages for purposes of restitution.

[¶ 6] Velasquez cites a definition of victim in N.D.C.C. § 12.1–34–01(8), but that definition does not apply to chapter 12.1–32, where the power to order restitution is found. *See* N.D.C.C. § 12.1–34–01(8) (reading "In this chapter, unless the context or subject matter otherwise requires ... 'Victim' means a natural person who has suffered direct or threatened physical, financial, or emotional harm...."). Chapter 12.1–34 is concerned with fair treatment of victims and witnesses. Chapter 12.1–32 prescribes sentencing alternatives. Section 12.1–32–02, N.D.C.C., puts no limitation on who can be a victim, and in fact, makes no reference to a "victim." Section 12.1–32–08(1), N.D.C.C., which requires a hearing prior to the ordering of restitution, refers to making "restitution to the victim or other recipient as determined by the court...." A crime involves an injury to the collective community, i.e., the state. It may also involve an injury to a person. But there is no doubt that the state and its taxpayers suffered damages resulting from the commission of the offense.

[¶ 7] Because the legislature has placed no limits on the term victim for purposes of restitution, but instead has given authority to courts to determine who or what entity may receive restitution, we conclude the restitution award was appropriate. *See* N.D.C.C. § 12.1–32–08(1).

## III

[¶ 8] Velasquez argues his right to be confronted with witnesses against him was violated. The right to confront witnesses is of constitutional magnitude. U.S. Const. amend. VI; N.D. Const. art. I, § 12; *see State v. Haugen,* 458 N.W.2d 288, 291 (N.D.1990). *See also* N.D.R.Ev. 611(b). It includes not only being allowed to confront the witnesses physically, but to cross-examine the witnesses as well. *State v. Hilling,* 219 N.W.2d 164, 171 (N.D. 1974). Defense counsel is given wide latitude to cross-examine prosecution witnesses. *Haugen,* 458 N.W.2d at 291. The concerns embodied in this right are satisfied so long as the defendant has the opportunity to expose weaknesses in the witness' testimony. *State v. Messner,* 1998 ND 151, ¶ 10, 583 N.W.2d 109. We review a claimed violation of a constitutional right de novo. *Id.* at ¶ 8, 583 N.W.2d 109.

[¶ 9] Counsel for Velasquez was given ample opportunity to expose weaknesses in Gonzalez's testimony. Counsel was allowed to thoroughly question Gonzalez in regard to his previous drug charges and plea bargain, in order to establish a link between Gonzalez's testimony and the plea bargain. Counsel elicited from Gonzalez he had been a drug dealer in the past, he was charged with four drug felonies, and some of the drugs the police found were for his own personal use. Gonzalez agreed on cross-examination he did not like jail; he wanted to get out; and he did not get out of jail until he agreed to work with the police as an informant. Counsel questioned Gonzalez regarding the reduction of charges for his parents, as well as a DUI Gonzalez had been arrested for.

[¶ 10] Yet, Velasquez claims his counsel was not given enough leeway to question Gonzalez regarding his drug use and whether the police trusted him. Counsel for Velasquez asked Gonzalez: "The police

and prosecution didn't trust you, right?" Later counsel asked Gonzalez: "They [the police and prosecution] thought you were going to use drugs, right?" Objections to both questions were sustained. These sustained objections did not impinge on Velasquez's rights. Both questions asked the witness to speculate on someone's opinion about him. Furthermore, as we already noted, counsel was given latitude to question Gonzalez on his motives for testifying.

[¶ 11] Velasquez also argues his rights were violated as counsel was prohibited from questioning Gonzalez regarding his bail. Velasquez contends it was necessary to go into the amount of the bond to demonstrate Gonzalez was not trusted by authorities; and, since Gonzalez could not get out of jail because of the high bond amount, it was a motivation for Gonzalez to work· with the prosecution. During the opening statement of Velasquez's counsel, the district court prohibited counsel from addressing the bail in Gonzalez's case because of the likelihood that evidence would not be admitted. However, during cross-examination of Gonzalez, the district court allowed the following exchange between counsel for Velasquez and Gonzalez:

Q   You cut a deal with the prosecutor, right?

A Yes.

Q   And suddenly because of that you got out of jail, didn't you?

A Yes.

Q   Bond was lowered, right?

A Yes.

Q   And you got out?

A Yes.

This exchange, along with the aforementioned leeway counsel was given to establish a link between Gonzalez's plea bargain and his testimony against Velasquez, demonstrates counsel was given ample opportunity to expose weaknesses in Gonzalez's testimony. *See Messner*, 1998 ND 151, ¶ 10, 583 N.W.2d 109. We conclude Velas-

quez's right to confrontation was not violated.

[¶ 12] We affirm.

[¶ 13] DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, CAROL RONNING KAPSNER, JJ., concur.