2000 ND 83

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Kevin Robert KEYES, Defendant and Appellant.**

**No. 990089.**

Supreme Court of North Dakota.

April 25, 2000.

Carl O. Flagstad, Minot, N.D., for defendant and appellant.

Mark A. Flagstad, Assistant State's Attorney, Minot, N.D., for plaintiff and appellee.

MARING, Justice.

[¶ 1] Kevin Robert Keyes appeals from a judgment entered upon a jury verdict finding him guilty of the delivery of a controlled substance, methamphetamine. On January 20, 1998, the Ward County Drug Task Force ("Task Force") sent an informant into Keyes' home to purchase methamphetamine. The informant had previously contacted the Task Force to inform on Keyes, stating that she had purchased drugs from Keyes for herself and others in the past. While outfitted with a wire, the informant entered Keyes' home and asked to buy drugs. Keyes removed several baggies from his closet and handed her a substance later identified as methamphetamine. She held up $350, of which Keyes took $250. After speaking for a few more minutes, the informant left Keyes' home and reported back to the Task Force officers. The informant and two Task Force officers testified about these events on behalf of the State at trial, and a jury found Keyes guilty of the charged offense on January 20, 1999. We affirm his conviction.

I.

[¶ 2] On appeal, Keyes first argues he was denied his constitutional right to confront a witness against him because the State refused to release the informant's address to him before trial. Our review of a claimed violation of a constitutional right is de novo. *State v. Messner*, 1998 ND 151, ¶ 8, 583 N.W.2d 109. On the record before us, we conclude Keyes' constitutional right to confrontation was satisfied.

[¶ 3] Before his trial, Keyes served a request for discovery asking the State to provide names and addresses of witnesses it planned to call in its case-in-chief. At that time, the State served a response listing the informant only as "C.I. # 209." Keyes asked for the informant's identity;

however, the State refused to provide the information, citing N.D.C.C. § 44–04–18.3(3) and N.D.R.Ev. 509. On November 30, 1998, the State filed a notice of endorsement of an additional witness, naming the informant. Keyes moved for sanctions, or in the alternative, a continuance, claiming he was prejudiced by the State's failure to name the informant as a witness because he had not been able to examine her at his preliminary hearing and prepare for her testimony at trial. The State justified its refusal to provide the name and address, again citing § 44–04–18.3(3) and Rule 509, and further argued Keyes already had the informant's name because the State inadvertently failed to redact her first name on one page of a statement she gave to criminal investigators, which had been provided to Keyes. The trial court granted a continuance so that the defense could depose the informant.

[¶ 4] Keyes deposed the informant on December 8, 1998; during the deposition, Keyes asked her to state her address, however she refused to answer upon the advice of the State. Keyes moved to dismiss the case or, in the alternative, to compel discovery and for a continuance. The trial court never issued a written ruling on the motion to dismiss and did not address the motion in court proceedings. Though we do not condone such inattentiveness on the part of the trial court and counsel, for the purposes of this appeal, we assume the motion to dismiss was denied because the case proceeded to trial and verdict. Under N.D.R.App.P. 35(c), in an appeal from a verdict or judgment, this Court "may review any intermediate order or ruling which involves the merits or which may have affected the verdict or judgment adversely to the appellant."

■ [¶ 5] The right of a criminal defendant to confront witnesses is found in both the Constitution of the United States and in our own state's constitution. See U.S. Const. amend. VI; N.D. Const. art. I, § 12; State v. Haugen, 458 N.W.2d 288, 291 (N.D.1990). A criminal defendant has a right not only to confront witnesses physically, but also to cross-examine witnesses. State v. Velasquez, 1999 ND 217, ¶ 8, 602 N.W.2d 693. Our Court has held this right is satisfied when the defendant has had the "opportunity to expose weaknesses" in the testimony of a witness. Id. Though the right of confrontation guarantees to a defendant the opportunity for an effective cross-examination, we have recognized it does not guarantee a "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Messner, 1998 ND 151, ¶ 10, 583 N.W.2d 109 (quoting United States v. Spotted War Bonnet, 933 F.2d 1471, 1474 (8th Cir.1991)).

■ [¶ 6] Keyes argues the trial court erred in denying the motion to dismiss. He states that, without the informant's address, he was unable to conduct a proper background investigation into her character and reputation for truthfulness in the area of her residence, without which he could not effectively cross-examine her at trial. However, the record reflects Keyes had ample opportunity to cross-examine her and did, in fact, expose weaknesses in her testimony. First, though the State did not divulge the informant's address, it did provide her North Dakota and federal criminal records, containing both felony and misdemeanor convictions. Second, during the deposition, Keyes had an opportunity to ask the informant questions about her background and elicited details about several other criminal convictions which were not listed in the rap sheets. Finally, Keyes extensively cross-examined the informant at trial, eliciting testimony about her prior convictions for drug use, burglary, arson, and the domestic abuse of a boyfriend who had shot her dog. She also admitted on cross-examination that she currently used drugs and worked as a stripper, and once spent several years on the lam attempting to avoid arrest. It seems, to the extent the informant's character and reputation could be impeached, Keyes did so.

[¶ 7] Keyes argues that in *State v. Lince,* 490 N.W.2d 476 (N.D.1992), this Court recognized the importance of the State's disclosure of witnesses, in that it provides a defendant with an opportunity to prepare an effective cross-examination. Keyes correctly states our holding in that case; however, the circumstances presented in *Lince* are substantially dissimilar from the facts in this case. In *Lince,* the State provided the defendant with the name of only one witness before trial, but announced it intended to call six witnesses during in-chamber discussions shortly before the trial began. *Lince,* at 476. Lince argued the State's untimely disclosure denied him an opportunity to effectively cross-examine the witnesses because he could not conduct investigations of their backgrounds and had no time to obtain an expert to rebut expert testimony offered on behalf of the State. *Id.* at 477. Unlike the defendant in *Lince,* Keyes possessed the informant's name, criminal record and deposition testimony prior to trial, and he conducted an effective cross-examination at trial. Our law requires that Keyes be afforded an opportunity to expose weaknesses in a witness' testimony; we conclude Keyes' trial presented him with that opportunity and, thus, his constitutional right to confrontation was satisfied.

## II.

[¶ 8] Keyes second argument on appeal concerns statements the State made during closing argument, which Keyes asserts were improper and unconstitutional comments on his decision to remain silent. Keyes did not object to these statements at trial; thus this Court will not overturn his conviction unless the statements constituted obvious error affecting his substantial rights. N.D.R.Crim.P. 52(b); *State v. Strutz,* 2000 ND 22, ¶ 20, 606 N.W.2d 886. Keyes identifies two statements which he asserts infringed upon his constitutional rights. First, during a discussion of the elements of the crime and the proof the State adduced for each element, the State said: "There is no evidence, no testimony,

no anything that refutes any of the testimony." Second, possibly in an attempt to rehabilitate the informant's credibility, the State made the following argument during rebuttal closing:

> The argument was Kevin didn't want anything to do with [the informant] when she came back. I think the testimony was, too, he doesn't want to have anything to do with her. Why is he taking phone calls from her on the 19th? She has testified she called him. There is no evidence that she didn't. Nobody said she didn't.

Keyes argues the references to the absence of testimony refuting the State's evidence were an indirect comment on his silence because he was the only person in a position to provide such testimony. We disagree.

[¶ 9] Under the Fifth and Fourteenth Amendments of the United States Constitution, and article I, section 12 of our state's Constitution, a criminal defendant cannot be compelled to be a witness against herself. We have held that a comment on the defendant's silence at trial is improper because it violates the defendant's constitutional right against self-incrimination. *State v. Ebach,* 1999 ND 5, ¶ 15, 589 N.W.2d 566. We review de novo a claim of a constitutional rights violation. *Messner,* 1998 ND 151, ¶ 8, 583 N.W.2d 109.

[¶ 10] We first analyze the State's reference to the absence of testimony contradicting evidence offered to prove the elements of the crime. We conclude this comment, taken in context, did not reflect on Keyes' failure to testify and thus was not error. First, the State's comment emphasized the strength of the case against Keyes as a whole; it did not focus on any particular fact directly calling attention to Keyes' silence. Second, Keyes called three witnesses in his defense case and, thus, the statement drew the jury's attention to the fact that the testimony of these witnesses had not diminished the strength of the State's proffered evidence that Keyes committed the charged crime.

[¶ 11] Turning to the State's second comment, we conclude this, too, was not error. The informant testified during the State's case that she had never been romantically involved with Keyes. However, all three witnesses Keyes presented testified she and Keyes dated in the past, and two of the witnesses testified they believed she and Keyes had a sexual relationship. Leatrice Keyes, Keyes' mother, testified that when the informant came back to Minot after an absence of several years, she attempted to rekindle her relationship with Keyes, but that he spurned her advances. In closing argument, the defense remarked on this testimony, claiming it showed both that the informant had not testified truthfully, and also that she was a jilted lover with her own agenda. Rather than reflecting on Keyes' failure to testify, the State's comment highlighted an inconsistency between the accounts offered by the State and the defense. *See Ebach*, 1999 ND 5, ¶ 15, 589 N.W.2d 566 (statement drawing attention to the inconsistency between accounts offered by the defendant and another witness was not an improper comment on the defendant's silence). Further, the statement directly responded to comments Keyes made in closing argument. Thus, the State's comment was not an improper reference to Keyes' silence and did not violate his constitutional rights.

## III.

[¶ 12] We conclude Keyes' constitutional right to confront the witnesses against him was satisfied and the State's comments in closing argument were not an impermissible comment on Keyes' right to remain silent. Thus, we affirm his conviction.

[¶ 13] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM, CAROL RONNING KAPSNER, JJ., concur.