Tufte, Justice.
[¶ 1] Mark Allen Rogers appeals from a district court judgment for gross sexual imposition ("GSI"). Rogers argues the district court: 1) violated his Sixth Amendment right to a public trial by closing his competency hearing on March 28, 2017; and 2) acted arbitrarily when it assigned extradition costs as restitution to this case. Because the district court did not make individualized findings supporting closure of the competency hearing, the Sixth Amendment public trial guarantee was violated.
*198 The restitution award was proper, and it is affirmed consistent with our remand. We reverse the district court's closure of the competency hearing and remand for further proceedings.
I
[¶ 2] In 2014, Rogers was charged with one count of GSI with a minor under 15 years of age-a class A felony under N.D.C.C. § 12.1-20-03. Rogers did not appear at his trial scheduled for February 10, 2015. He was extradited from Thailand in November of 2016 and charged with bail-jumping. The district court held several pretrial hearings in the GSI case, some of which included issues raised in the separate bail-jumping case. On March 28, 2017, the court held a hearing relating to both cases in which it first considered whether Rogers was competent to proceed to trial. The courtroom was closed for the competency hearing. After the court found Rogers competent to proceed, Rogers indicated his desire to plead guilty to both charges. The courtroom was opened to the public to receive Rogers' guilty plea to both charges. Rogers argues the closure of the competency hearing violated his Sixth Amendment right to a public trial, was a structural error, and requires reversal of the judgment.
II
[¶ 3] In criminal cases, errors not raised in the district court may fall into one of three categories: forfeited error, waived error, and structural error. State v. Watkins , 2017 ND 165, ¶ 12, 898 N.W.2d 442. A structural error is a "constitutional error[,] 'so intrinsically harmful as to require automatic reversal' regardless of whether [it was] forfeited or waived." Id. ; State v. Rende , 2018 ND 56, ¶ 8, 907 N.W.2d 361. "We apply a de novo standard of review to a claim of a constitutional violation." State v. Decker , 2018 ND 43, ¶ 6, 907 N.W.2d 378 (quoting State v. Aguero , 2010 ND 210, ¶ 16, 791 N.W.2d 1 ).
[¶ 4] A structural error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." Johnson v. United States , 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (quoting Arizona v. Fulminante , 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) ). Such errors "necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." Neder v. United States , 527 U.S. 1, 9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). They "defy analysis by 'harmless-error' standards by affecting the entire adjudicatory framework." Puckett v. United States , 556 U.S. 129, 141, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009) (internal quotations omitted). Structural errors do not require a finding of impact on the trial's outcome. United States v. Marcus , 560 U.S. 258, 263, 130 S.Ct. 2159, 176 L.Ed.2d 1012 (2010) ; see also Decker , 2018 ND 43, ¶ 8, 907 N.W.2d 378 ("Structural error differs substantially from obvious error, for which a defendant bears the burden of showing either prejudice or an adverse effect on the outcome of the proceeding."). Not only do structural errors not require an impact finding, but part of what makes an error a "structural error" is the difficulty in "asses[sing] the effect of the error." Marcus , 560 U.S. at 263, 130 S.Ct. 2159.
[¶ 5] "The purpose of the structural error doctrine is to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial." Weaver v. Massachusetts , --- U.S. ----, 137 S.Ct. 1899, 1907, 198 L.Ed.2d 420 (2017). Only a handful of situations have been determined to fall within the structural error category: "deprivation of right to counsel, lack of judicial impartiality, *199 racial exclusion from a grand jury, violation of the right to self-represent, and denial of the right to a public trial." Decker , 2018 ND 43, ¶ 8, 907 N.W.2d 378.
[¶ 6] Public trial violations are considered structural error largely because of the "difficulty of assessing the effect of the error." Weaver , 137 S.Ct. at 1910 (quoting United States v. Gonzalez-Lopez , 548 U.S. 140, 149 n.4, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006) (where the Supreme Court of the United States "rest[s its] conclusion of structural error upon the difficulty of assessing the effect of the error") ). The error cannot be quantified when a public trial right is violated, yet it is present. Fundamental unfairness, another factor used to determine structural errors, see Weaver , 137 S.Ct. at 1908, is particularly unhelpful in a public trial violation because there are cases where an "unlawful closure might take place and yet the trial still will be fundamentally fair from the defendant's standpoint." Id. at 1910. Here, the competency hearing was closed at the request of Rogers and without objection by the State. Rogers' inviting the district court to commit the error would ordinarily foreclose relief from that error on appeal, Watkins , 2017 ND 165, ¶ 14, 898 N.W.2d 442, but "[s]tructural errors are immune to the 'invited error' doctrine." Decker , 2018 ND 43, ¶ 8, 907 N.W.2d 378. Because a violation of the right to a public trial is a structural error, Waller v. Georgia , 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), Rogers is entitled to relief on appeal if the competency hearing is part of the "public trial."
III
[¶ 7] The Sixth Amendment expressly protects the right to a public trial: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. This right is further protected by the North Dakota constitution: "In criminal prosecutions in any court whatever, the party accused shall have the right to a speedy and public trial." N.D. Const. art. 1, § 12. Each provision defines its scope in three dimensions: who may assert the right (the accused); when the right attaches ("criminal prosecutions"); and what the right guarantees (a "public trial"). Rothgery v. Gillespie County , 554 U.S. 191, 214, 128 S.Ct. 2578, 171 L.Ed.2d 366 (2008) (Alito, J., concurring). At the competency hearing, Rogers was undeniably an "accused," so whether he is within the scope of who is not in question. We are concerned here with the when and the what : whether a pretrial competency hearing is part of a "criminal prosecution" such that the public trial right has attached, and, if so, whether the public trial right was violated by the district court's closure of the competency hearing by agreement of Rogers and the State.
A. Why
[¶ 8] Before we reach the questions of when and what , a brief discussion of why is in order. Public trials are "for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." Waller , 467 U.S. at 46, 104 S.Ct. 2210 (quoting In re Oliver , 333 U.S. 257, 270 n.25, 68 S.Ct. 499, 92 L.Ed. 682 (1948) ); State v. Garcia , 1997 ND 60, ¶ 20, 561 N.W.2d 599 ("Although the guarantee of a public trial was created for the benefit of criminal defendants, the right is also shared with the public; the common concern is to assure fairness." (internal citation omitted) ); State v. Nyhus , 19 N.D. 326, 124 N.W. 71, 72 (1909) ("The Constitution of this state guarantees to all persons *200 accused of crime a speedy and public trial. These provisions are for the benefit of the accused."). A public trial is also a tool to "encourage[ ] witnesses to come forward and discourage[ ] perjury." Waller , 467 U.S. at 46, 104 S.Ct. 2210 ; State v. Klem , 438 N.W.2d 798, 800 (N.D. 1989) ("public trial ... brings forth witnesses who might be unknown to the parties and might not otherwise testify, and tends to assure testimonial trustworthiness"). "Openness in court proceedings may improve the quality of testimony, induce unknown witnesses to come forward with relevant testimony, cause all trial participants to perform their duties more conscientiously, and generally give the public an opportunity to observe the judicial system." Gannett Co., Inc. v. DePasquale , 443 U.S. 368, 383, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) ; Garcia , at ¶ 20. "Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." Fulminante , 499 U.S. at 310, 111 S.Ct. 1246 (quoting Rose v. Clark , 478 U.S. 570, 577-78, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) ).
[¶ 9] Our cases reference four basic principles embodied in the public trial right: (1) ensuring a fair trial; (2) reminding "the prosecutor and judge of their responsibility to the accused and the importance of their functions"; (3) encouraging witnesses to testify; and (4) discouraging perjury. Decker , 2018 ND 43, ¶ 14, 907 N.W.2d 378 (citing Peterson v. Williams , 85 F.3d 39, 43 (2d Cir.1996) ). Because the public and the judicial system also have interests implicated by the public trial right, the parties may not simply agree to a closed proceeding. "The public has a right to be present whether or not any party has asserted the right." Presley v. Georgia , 558 U.S. 209, 214, 130 S.Ct. 721, 175 L.Ed.2d 675 (2010) ; Klem , 438 N.W.2d at 805 ; Press-Enterprise Co. v. Superior Court of California , 464 U.S. 501, 503-04, 508, 513, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (reversing conviction where both parties sought confidentiality for transcript of closed voir dire proceedings); Singer v. United States , 380 U.S. 24, 34-35, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965) ("The ability to waive a constitutional right does not ordinarily carry with it the right to insist upon the opposite of that right. For example, although a defendant can, under some circumstances, waive his constitutional right to a public trial, he has no absolute right to compel a private trial....").
B. When
[¶ 10] It appears to be a matter of first impression whether the public trial right has attached at a pretrial competency hearing. We consider this question mindful of the varied interests implicated by the right and how closure of a competency hearing compares to other closures that have been found to violate the public trial right.
[¶ 11] A competency hearing may be held "[w]henever there is reason to doubt the defendant's fitness to proceed." N.D.C.C. § 12.1-04-06. A competency determination under Chapter 12.1-04 or Chapter 12.1-04.1 applies by its terms only to a "defendant." An individual is a "defendant" only after that individual has been formally charged with a crime. Although an issue of competency may arise during trial, in many cases-and as happened here-a competency evaluation and hearing will be held in advance of the date set for trial. See, e.g. , State v. Heger , 326 N.W.2d 855, 856-57 (N.D. 1982) (describing the first of three competency hearings "four days after [Heger] was arrested" and the third the day before trial). The United States Supreme Court has held that the *201 Sixth Amendment public trial right attaches as early as a suppression hearing, Waller , 467 U.S. at 43, 104 S.Ct. 2210, and as late as sentencing, Smith v. Doe , 538 U.S. 84, 99, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) ("our criminal law tradition insists on ... public imposition of sentence"); see also U.S. v. Thompson , 713 F.3d 388, 393 (8th Cir.2013).
[¶ 12] In Waller , the Supreme Court held the "Sixth Amendment right to a public trial applies to a suppression hearing." 467 U.S. at 43, 104 S.Ct. 2210. "[S]uppression hearings often are as important as the trial itself." Id. at 46, 104 S.Ct. 2210. "[I]n many cases, the suppression hearing was the only trial, because the defendants thereafter pleaded guilty pursuant to a plea bargain." Id. at 47, 104 S.Ct. 2210 (emphasis added). A motion to suppress must be brought before trial if the basis is reasonably available. N.D.R.Crim.P. 12(b)(3)(C). Compared to a suppression hearing, a competency hearing may be at least as important a part of trial. A suppression hearing is frequently dispositive because if critical evidence is suppressed, a charge may be dismissed. And if the evidence is not suppressed, a defendant may plead guilty, as described in Waller , 467 U.S. 39, 104 S.Ct. 2210 (1984). Similarly, a competency hearing may determine the outcome of the case: if a defendant is found not competent, he may not be tried; but if found competent, he may plead guilty, as Rogers did here. Further, "[i]f found to be incompetent, a defendant can have his or her freedom restricted for an undetermined amount of time without the full due process accorded in a criminal proceeding." State v. Chen , 178 Wash.2d 350, 309 P.3d 410, 414 (2013). A public competency hearing advances the four principles embodied in the Sixth Amendment in the same way public exposure advances them in suppression hearings and other important phases of a trial. Thus, the Sixth Amendment public trial right attaches to a pretrial competency hearing.
[¶ 13] The Sixth Amendment right to counsel is limited in scope by the same who and when and thus provides an instructive parallel when considering the scope of the public trial right. The right to counsel protects the right to a fair trial and attaches once adversarial judicial proceedings are initiated. Rothgery , 554 U.S. at 213, 128 S.Ct. 2578 (holding "a criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction, marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel"). Initiation of adversarial proceedings can occur "by way of formal charge, preliminary hearing, indictment, information, or arraignment." United States v. Gouveia , 467 U.S. 180, 188, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). After attachment, a defendant has the right to have counsel present "at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." United States v. Wade , 388 U.S. 218, 226, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The right to counsel extends to " 'critical' pretrial proceedings." Gouveia , at 189, 104 S.Ct. 2292. A competency hearing is a critical phase for purposes of the right to counsel. Raymond v. Weber , 552 F.3d 680, 684 (8th Cir.2009) (where the court held "a competency hearing is a critical stage because at such a hearing the defendant is confronted with adversarial proceedings and legal questions on which the defendant would benefit from counsel's advice" and a defendant is "thus constitutionally entitled to representation by counsel at his competency hearing"); see also *202 State v. Lewis , 300 N.W.2d 210, 217 (N.D. 1980) ("a pretrial proceeding is a critical stage if 'the presence of ... counsel is necessary to preserve the defendant's ... right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself.' " (quoting Wade , 388 U.S. at 227, 87 S.Ct. 1926 ) ).
C. What
[¶ 14] The right to a public trial "must give way in rare instances to other interests essential to the fair administration of justice." State v. Garcia , 1997 ND 60, ¶ 20, 561 N.W.2d 599. Two examples of such overriding interests are "the defendant's right to a fair trial [and] the government's interest in inhibiting disclosure of sensitive information." Presley , 558 U.S. at 213, 130 S.Ct. 721 (quoting Waller , 467 U.S. at 45, 104 S.Ct. 2210 ). The right of a public trial gives way to other interests when:
The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values, and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.
Press-Enterprise Co. , 464 U.S. at 510, 104 S.Ct. 819.
[¶ 15] We have applied the four Waller factors when evaluating claimed violations of the public trial right. Decker , 2018 ND 43, ¶ 9, 907 N.W.2d 378. The four factors are:
1. the claiming party must advance an overriding interest that is likely to be prejudiced,
2. the closure must be no broader than necessary to protect that interest,
3. the trial court must consider reasonable alternatives to closing the proceeding, and
4. it must make findings adequate to support the closure.
Id. (quoting Waller , 467 U.S. at 48, 104 S.Ct. 2210 ). Ultimately, trial courts must take "every reasonable measure to accommodate public attendance at criminal trials." Presley , 558 U.S. at 215, 130 S.Ct. 721.
[¶ 16] The Waller factors were not brought to the district court's attention here; nothing in the record indicates the court considered the factors, either explicitly or implicitly. Rogers' attorney was vague in requesting closure of the competency hearing:
Your Honor, I guess-I don't know everyone present in the courtroom. It's my understanding that the findings in the report would have a certain degree of confidentiality, so I don't have any problem discussing them on the record, but I don't know about the discussion occurring on an open public record and I don't know who all is present.
The State cites N.D.C.C. Chapter 12.1-04.1 on appeal in support of closing the competency hearing. Chapter 12.1-04.1 relates to determinations of criminal responsibility. The State's reliance on Chapter 12.1-04.1 is misplaced because fitness to proceed to trial was the issue before the district court, not a claimed lack of criminal responsibility. Although Chapter 12.1-04 was not cited to, or by, the district court, it appears that the competency hearing at issue here was under N.D.C.C. § 12.1-04-07(3), which governs determination of "whether the defendant currently lacks fitness to proceed." Chapter 12.1-04 does not provide for mandatory closure; only Chapter 12.1-04.1 provides for mandatory closure of proceedings on request of the defendant. N.D.C.C. § 12.1-04.1-02 (stating that "[u]pon request *203 by the defendant, the application and the proceedings on the application must be ex parte and in camera").
[¶ 17] Any closure of a proceeding implicating the public trial right, whether relating to criminal responsibility or fitness to proceed, requires consideration of the Waller factors. Rogers requested the closure but articulated no overriding interest. The district court did not tailor the closure to any overriding interest likely to be prejudiced, nor did it consider alternatives to closure. Even especially sensitive proceedings that may ordinarily support closure may not be categorically closed. See Globe Newspaper Co. v. Superior Court , 457 U.S. 596, 609, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) (rejecting categorical rule mandating closure and "requiring the trial court to determine on a case-by-case basis whether the State's legitimate concern for the well-being of the minor victim necessitates closure"). To properly close a pretrial competency hearing, the court must apply Waller as an overlay to any requirements in statute. The proceedings may then be closed only to the extent that application of the Waller factors permit the closure.
[¶ 18] Our conclusion that the public trial right is violated by closure of a competency hearing without application of the Waller factors does not mean that all such hearings must be open to the public. Given the importance of the public trial right, before a hearing is closed the court must analyze the particular circumstances of the case to ensure it is in compliance with the constitutional requirements described in Waller . See Commonwealth v. Jones , 472 Mass. 707, 37 N.E.3d 589, 607 (2015) (holding that the trial court must make case-by-case determination under Waller before closing pretrial rape shield hearings under a statute requiring an in camera hearing). If the factors are met, the public trial right is not violated and the proceedings may be closed.
[¶ 19] Rogers asks that the judgment be reversed, citing decisions stating that structural errors, including public trial violations, "require automatic reversal." Watkins , 2017 ND 165, ¶ 13, 898 N.W.2d 442. Public trial violations and other structural errors affecting the trial process during the trial itself have been held to require reversal without a showing of prejudice. Presley v. Georgia , 558 U.S. 209, 130 S.Ct. 721, 175 L.Ed.2d 675 (2010) (voir dire ); State v. Klem , 438 N.W.2d 798 (N.D. 1989) (trial testimony of victim). In contrast, public trial violations during pretrial hearings have been held to require only a new, public hearing, not automatic reversal. 3 Criminal Constitutional Law § 14A.01[2][f] (citing Waller , 467 U.S. at 50, 104 S.Ct. 2210 (ordering new suppression hearing) ).
[¶ 20] In Waller , the Supreme Court said "the remedy should be appropriate to the violation." 467 U.S. at 50, 104 S.Ct. 2210. Waller held that a public trial violation during a suppression hearing required only a new suppression hearing. Id . A new trial would be a "windfall" unless the result of the suppression hearing was different. Id ."A new trial need be held only if a new, public suppression hearing results in the suppression of material evidence not suppressed at the first trial, or in some other material change in the positions of the parties." Id. ; see also Commonwealth v. Jones , 472 Mass. 707, 37 N.E.3d 589, 609 (2015) (ordering new pretrial hearing and stating that no new trial would be required unless the pretrial hearing yielded a different result).
[¶ 21] Consistent with Waller , we remand for a new competency hearing. Unlike in Waller , where the pretrial hearing was a suppression hearing, because this is a competency hearing, we do not remand for a new hearing on Rogers' present competency.
*204 A person's competency may be restored by treatment or passage of time, N.D.C.C. § 12.1-04-08 (procedure when "the defendant has regained fitness to proceed"). A determination of Rogers' current competency would not inform the court whether he was indeed competent in March of 2017 at the closed competency hearing and subsequent change of plea. Thus, the district court must hold a competency hearing examining the original evaluation of Rogers' fitness to proceed as of March 12, 2017, conducted by Dr. Lisota from the North Dakota State Hospital. The hearing must remain open to the public, unless the Waller factors are reviewed by the court to determine what portions of the hearing, if any, should be closed. If the new competency hearing indicates Rogers was not competent to proceed to trial or guilty plea, the criminal judgment must be vacated and the proceedings suspended under N.D.C.C. § 12.1-04-08. If, however, a new competency hearing results in a finding of competency, disturbing the criminal judgment would be a windfall for Rogers and not in the public interest.
[¶ 22] We recognize that the remedy here, like the remedy in Waller , may appear to be form over substance. Without a legal remedy for its violation, the expected adherence to a legal right will be diminished. See Marbury v. Madison , 5 U.S. 137, 163, 1 Cranch 137, 2 L.Ed. 60 (1803) ("every right, when withheld, must have a remedy, and every injury its proper redress"). The opportunity for public observation of court proceedings preserves both the fact and appearance of fair and impartial justice. The public trial right is for the benefit of the defendant and the public. Whether or not there is frequent observation of court proceedings by the public, the knowledge that the opportunity is freely available preserves the interests protected by the right.
IV
[¶ 23] Rogers argues the imposition of restitution for extradition costs in the GSI case was legal error. The standard of review for restitution is well established.
When reviewing a restitution order, we look to whether the district court acted within the limits set by statute, which is a standard similar to our abuse of discretion standard. A district court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law.
State v. Bruce , 2018 ND 45, ¶ 4, 907 N.W.2d 773 (internal quotations and citations omitted). The district courts possess a "wide degree of discretion when determining restitution awards." State v. Putney , 2016 ND 135, ¶ 6, 881 N.W.2d 663. But, "in determining whether or not the district court abused its discretion through misapplication or misinterpretation of the law," we apply a de novo standard of review. State v. Kostelecky , 2018 ND 12, ¶ 6, 906 N.W.2d 77. A district court's award of restitution to a crime victim is made under N.D. Const. art. I, § 25 (1)(n) and N.D.C.C. § 12.1-32-08. The "State has the burden of proving the amount of restitution by a preponderance of the evidence." State v. Kleppe , 2011 ND 141, ¶ 28, 800 N.W.2d 311. When determining restitution, the district court must consider "the reasonable damages sustained by the victim." N.D.C.C. § 12.1-32-08(1)(a).
[¶ 24] The "reasonable damages sustained by the victim" must be "limited to those directly related to the criminal offense and expenses actually incurred as a direct result of the defendant's criminal action." State v. Carson , 2017 ND 196, ¶ 6, 900 N.W.2d 41. This Court found *205 that "directly related" and "direct result" require that there "must exist an immediate and intimate causal connection between the criminal conduct and the damages or expenses for which restitution is ordered." State v. Pippin , 496 N.W.2d 50, 53 (N.D. 1993). A defendant cannot be assessed restitution for damages resulting from a separate crime, not committed by the defendant, even though the two cases stem from the same fact pattern. E.g. , Carson , 2017 ND 196, 900 N.W.2d 41 (holding defendant could not be charged restitution for burglary damages when she was guilty only of possession of stolen property (citing Pippin , 496 N.W.2d 50 (N.D. 1993) ) ).
[¶ 25] Our holdings in Carson and Pippin do not preclude restitution here. Rogers pled guilty to both the GSI and the bail-jumping charges. Further, Rogers fled the country during and from the GSI prosecution. It was his criminal action of fleeing from the GSI prosecution that directly resulted in the bail-jumping charge and the cost to return him for trial. This is more closely aligned with the situation in Bruce , where, considering restitution for a manslaughter offense, this Court held that "funeral expenses were a direct result of the criminal actions of Bruce, as required by N.D.C.C. § 12.1-32-08(1)(a)." 2018 ND 45, ¶ 7, 907 N.W.2d 773.
[¶ 26] Also, the district court's jurisdiction over restitution in the bail-jumping case was continually held open. The restitution issue was neither waived nor closed prior to the October 23, 2017, GSI sentencing hearing. The March 28, 2017, judgment for bail-jumping states the "[c]ourt reserves jurisdiction to determine restitution for extradition costs." The restitution was left open "until the time of sentencing on file 51-2014-CR-01616" (the GSI case). See State v. Hatlewick , 2005 ND 125, ¶¶ 13-15, 700 N.W.2d 717 (where the district court reserved the right to hold restitution open and this Court affirmed restitution jurisdiction was retained). The sentencing was not complete until the sentencing hearing was concluded and a judgment resolving the held-open restitution was entered. In the GSI criminal judgment, dated October 23, 2017, the court left restitution open for 90 days. Within the 90-day period, on January 12, 2018, the restitution hearing occurred. Thus, the court, in its discretion, retained jurisdiction on the unresolved restitution issue.
[¶ 27] The "causal relationship between the criminal act and the damages for which restitution is ordered" is present regardless which case the restitution is attached to. State v. Steinolfson , 483 N.W.2d 182, 184 (N.D. 1992). Because there is a close and direct connection between both charges-Rogers pled guilty to both charges, one arising out of the prosecution of the other, and the jurisdiction over restitution was held open in both cases-the expenses from Rogers' flight and extradition could have been applied to either case and thus were appropriately assigned to the GSI case.
[¶ 28] Rogers raises several arguments that lack merit and require little discussion. The district court may order restitution be paid to the County. Under N.D.C.C. § 12.1-32-08, the "court ... shall order that the defendant make restitution to the victim or other recipient as determined by the court ." N.D.C.C. § 12.1-32-08(1) (emphasis added). Further, a "crime involves an injury to the collective community.... [T]here is no doubt that the state and its taxpayers suffered damages resulting from the commission of the offense." State v. Velasquez , 1999 ND 217, ¶ 6, 602 N.W.2d 693. Thus, the court may order restitution be paid to the County either as a "victim" or as an "other recipient as determined by the court."
*206 [¶ 29] The extradition costs can be labeled "restitution." Rogers argues restitution falls under N.D.C.C. § 12.1-32-02(1)(e) ("[r]estitution for damages resulting from the commission of the offense") and extradition costs fall under subsection (1)(a) ("[p]ayment of the reasonable costs of the person's prosecution"). These two subsections are not mutually exclusive. The preamble to both subsections (a) and (e) states that every convicted person "must be sentenced to one or a combination of the following alternatives." N.D.C.C. § 12.1-32-02(1) (emphasis added). "[T]rial courts are vested with a wide degree of discretion in arriving at restitution awards." State v. Tupa , 2005 ND 25, ¶ 8, 691 N.W.2d 579. Here, the district court could have assessed costs of extradition under either subsection (a) or (e); thus, it did not err in labeling it restitution.
[¶ 30] The district court acted "within the limits set by statute" and did not act arbitrarily, unreasonably, or unconscionably when assessing the extradition costs in the GSI judgment. The restitution was the result of a rational mental process leading to a reasoned determination, and there was no misapplication of the law.
V
[¶ 31] Rogers' Sixth Amendment right to a public trial was violated when the district court closed his competency hearing on March 28, 2017, without consideration of the Waller factors. We reverse the district court's closure of the competency hearing and remand for further proceedings consistent with this opinion.
[¶ 32] Jerod E. Tufte
Daniel J. Crothers
Jon J. Jensen
Gerald W. VandeWalle, C.J.
[¶ 33] The Honorable Lisa Fair McEvers disqualified herself subsequent to oral argument and did not participate in this decision.