2004 ND 155

**Palmer J. MILLER, Claimant and Appellant**

v.

**WORKFORCE SAFETY AND INSURANCE, Appellee**

and

**Real Builders Inc., Respondent.**

**No. 20040064.**

Supreme Court of North Dakota.

July 29, 2004.

Stephen D. Little, Dietz & Little Lawyers, Bismarck, ND, for claimant and appellant.

Lawrence A. Dopson, Special Assistant Attorney General, Bismarck, ND, for appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Palmer Miller appealed from a district court judgment affirming a Workforce Safety and Insurance ("WSI") order denying him further disability and vocational rehabilitation benefits. We temporarily remand for an evidentiary hearing regarding alleged improper ex parte communications.

I

[¶ 2] In July 1993, Miller suffered a work-related injury to his lower back while employed as a carpenter with Real Builders, Inc., of Minot. The Worker's Compensation Bureau, now WSI, accepted Miller's claim and paid associated medical expenses and disability benefits. Between the time of his injury and the order at issue, Miller underwent numerous functional capacity evaluations ("FCEs") to determine his ability to return to gainful employment. A March 2001 FCE placed Miller at "a light job classification on a full time basis." In September 2001, WSI notified Miller of its decision to discontinue his benefits effective October 19, 2001. Miller requested reconsideration of WSI's decision and, in November 2001, WSI issued an order denying further benefits to Miller, stating he was employable, without retraining, on a full-time basis as a telephone solicitor, customer-service representative, floor walker, or mail clerk. Miller requested a formal hearing, which was held in December 2002 before a Temporary Administrative Law Judge ("ALJ"). The ALJ issued recommended findings of fact, conclusions of law, and order, in which he concluded Miller was employable only on a part-time basis, could not obtain substantial gainful employment, and WSI's

rehabilitation plan had not identified an appropriate rehabilitation option.

[¶ 3] After the hearing, WSI's outside litigation counsel, Lawrence Dopson, wrote a letter to Tim Wahlin, an attorney with WSI, expressing his concerns with the ALJ's recommendation and informing Wahlin of different possibilities that could arise depending on whether WSI adopted or rejected the ALJ's decision. At oral argument, outside counsel stated this was the normal procedure in these types of cases and he assumed the letter was transferred in some way to Nick Jolliffe, WSI claims director. A copy of the letter was sent to Miller's counsel, who acknowledged that he received it, but did not respond to it.

[¶ 4] In April 2003, Jolliffe issued WSI's findings, conclusions, and order rejecting the ALJ's recommendations. WSI concluded Miller was employable full-time and ineligible for disability benefits after October 19, 2001. Miller appealed to the district court, which affirmed WSI's order. The district court concluded that the difference between the ALJ's recommended decision and WSI's order was based on a difference in the weight and credibility given to the evidence and that Miller received a fair hearing.

[¶ 5] On appeal, Miller claims WSI failed to identify the first appropriate rehabilitation option and that he was denied a fair hearing due to improper ex parte communications.

## II

[¶ 6] On appeal we review an agency order in the same manner as the district court under N.D.C.C. § 28–32–46. *Zander v. Workforce Safety and Ins.*, 2003 ND 194, ¶ 6, 672 N.W.2d 668. A district court must affirm an order of an administrative agency unless it finds any of the following are present:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46. We conclude an evidentiary hearing is necessary to determine whether WSI directly or indirectly engaged in improper ex parte communications.

[¶ 7] Ex parte communications are those that are " 'without notice and opportunity for all parties to participate in the communication.' " *Kraft v. State Bd. of Nursing*, 2001 ND 131, ¶ 44, 631 N.W.2d 572 (quoting former N.D.C.C. § 28–32–12.1, now codified at N.D.C.C. § 28–32–37).

There are strong policy reasons for prohibiting ex parte communications between the attorney who represented the agency at an adversarial hearing and the agency decision maker. In *Camero v.*

*United States,* 179 Ct.Cl. 520, 375 F.2d 777 (Ct.Cl.1967), the court held an agency decision was invalid where the attorney representing the agency communicated with the decision maker, advised him to reject the recommendation of a grievance committee, and participated in preparing the final decision. The court reasoned:

> [O]ne of the fundamental premises inherent in the concept of an adversary hearing, particularly if it is of the evidentiary type, is that neither adversary be permitted to engage in an ex parte communication concerning the merits of the case with those responsible for the decision. . . . It is difficult to imagine a more serious incursion on fairness than to permit the representative of one of the parties to privately communicate his recommendations to the decision makers. To allow such activity would be to render the hearing virtually meaningless.

*Scott v. N.D. Workers Comp. Bureau,* 1998 ND 221, ¶ 12, 587 N.W.2d 153 (quoting *Camero,* at 780–81 (citations omitted)).

[¶ 8] Section 28–32–37(1), N.D.C.C., provides that an agency head or hearing officer in an adjudicative proceeding may not engage in ex parte communications, directly or indirectly, regarding any issue in the proceeding, while the proceeding is pending. Section 65–01–16(8), N.D.C.C., provides:

> Rehearings must be conducted as hearings under chapter 28–32 to the extent provisions of that chapter do not conflict with this section. The organization may arrange for the designation of hearing officers to conduct rehearings and issue recommended findings, conclusions, and orders. *In reviewing recommended findings, conclusions, and orders, the organization may consult with its legal counsel representing it in the proceeding.*

(emphasis added). "This section is effective for all orders and decisions on all claims regardless of the date of injury or the date the claim was filed." N.D.C.C. § 65–01–16(12). In *Lawrence v. N.D. Workers Comp. Bureau,* we harmonized N.D.C.C. § 65–01–16(8) with N.D.C.C. ch. 28–32 by determining the Bureau can consult with its outside legal counsel in reviewing a pending ALJ recommendation as long as those communications are not ex parte. 2000 ND 60, ¶ 20, 608 N.W.2d 254.

[¶ 9] This case raises concerns regarding the provisions in N.D.C.C. § 28–32–37, including the requirement there must be an opportunity for all parties to participate in communications regarding the merits of an adjudicative proceeding. Although Miller's counsel received a copy of the letter from outside counsel to Wahlin and could have replied to it, that reply might well have been presumptuous because there is no legal relationship between Wahlin and Miller's counsel, and WSI's rules lack any provision establishing the opportunity for such a reply.

[¶ 10] Further, even though the procedure used by WSI in this case may be an attempt to comply with the statutes and our decision in *Lawrence,* it raises concerns about the treatment of substantive communications received by someone at WSI who may or may not be involved in the decision making process and how or whether that information is passed on to the decision maker. Outside counsel stated at oral argument that he assumed the letter to Wahlin was, in some fashion, given to Jolliffe. A better approach would be to send the letter directly to Jolliffe and provide a copy to opposing counsel. Similar to a post-trial brief, this would provide opposing counsel an opportunity to respond by writing directly to the decision

maker. Sending the letter directly to the decision maker negates any possibility of intentional or unintentional distortion of either side's communications and allows the decision maker to view the parties' positions without having them filtered through other levels of the organization. It also serves as additional notification to the other party that the communication will be considered by the decision maker, and therefore, should likely be responded to.

[¶ 11] We will not assume that any improper ex parte communications actually occurred in this case because the only communication contained in this record is the letter from outside counsel to Wahlin, which Miller's counsel received. *See Lewis v. North Dakota Workers Comp. Bureau*, 2000 ND 77, ¶ 9, 609 N.W.2d 445 ("The appeal statute specifically limits a district court's appellate review to the administrative agency record filed with the court"). This record does not contain any direct or indirect ex parte communication between Jolliffe and outside counsel, and Miller did not seek to supplement the certified record on appeal. *See Lawrence*, 2000 ND 60, ¶ 10, 608 N.W.2d 254 ("Lawrence ... moved to supplement the certified record to include the Bureau's ex parte communications with its outside litigation counsel about the pending ALJ recommendation"). Certainly, a motion to supplement the record would have been a more prudent approach by Miller and, in the future, failing to supplement the record at the district court or agency level may foreclose an opportunity to claim the existence of improper ex parte communications which are not contained in the record. *See Sprunk v. North Dakota Workers Comp. Bureau*, 1998 ND 93, ¶ 9, 576 N.W.2d 861 (Appellant did not attempt to augment the record by using the procedure provided by N.D.C.C. § 28-32-45,

and therefore, the challenged evidence was not part of the record on appeal and was not considered). However, sufficient concerns are raised in this case regarding the potential of direct or indirect ex parte communications to implicate N.D.C.C. § 28-32-46(4) and cause us to remand for an evidentiary hearing.

[¶ 12] Because of the substantial policy concerns implicated by improper ex parte communications, we remand to WSI with instructions to hold an evidentiary hearing to ascertain whether any improper ex parte communications occurred and, if so, to place them in the record. In the interest of judicial economy, we retain jurisdiction similar to our procedure under N.D.R.App.P. 35(a)(3) because our decision to remand is limited to obtaining evidence of alleged post-hearing ex parte communications and does not resolve the merits of the agency's decision. *See Horsley v. North Dakota Workers Comp. Bureau*, 2001 ND 60, ¶ 12, 623 N.W.2d 377 (quoting *Luithle v. Burleigh County Soc. Servs.*, 474 N.W.2d 497, 499–500 (N.D.1991)) ("Section 28-32-18, N.D.C.C. [now codified at N.D.C.C. § 28-32-45], evinces a clear legislative intent that the district court retain jurisdiction when the matter is remanded for the limited purpose of considering additional, rejected, or excluded evidence"); *see also Courchene v. Delaney Distrib.*, 418 N.W.2d 781, 781–82 (N.D. 1988).

[¶ 13] DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, JJ., and BURT L. RISKEDAHL, District Judge, concur.

[¶ 14] The Honorable BURT L. RISKEDAHL, District Judge, sitting in place of KAPSNER, J., disqualified.