2006 ND 1

**Palmer J. MILLER, Claimant and Appellant**

v.

**WORKFORCE SAFETY AND INSURANCE, Appellee**

and

**REAL BUILDERS INC. Respondent.**

**No. 20040064.**

Supreme Court of North Dakota.

Jan. 5, 2006.

Rehearing Denied Feb. 8, 2006.

Stephen D. Little, Dietz & Little Lawyers, Bismarck, for claimant and appellant.

Leo F.J. Wilking, Special Assistant Attorney General, Fargo, for appellee.

MARING, Justice.

[¶ 1] Palmer Miller appealed from a district court judgment affirming a Workforce Safety and Insurance ("WSI") order denying him further disability and vocational rehabilitation benefits. Miller argued that WSI failed to identify the first appropriate rehabilitation option and that he was denied a fair hearing due to improper ex parte communications. Previously, we remanded for an evidentiary hearing regarding alleged improper ex parte communications. *Miller v. Workforce Safety and Insurance*, 2004 ND 155, 684 N.W.2d 641. This opinion follows the Administrative Law Judge's ("ALJ") findings at the evidentiary hearing, and WSI's final determination on the issue of ex parte communications on remand. We reverse WSI's adoption of the ALJ's findings that there were no improper ex parte communications and the district court judgment affirming WSI's order. We conclude Miller was not given a fair hearing, and we remand to WSI for a rehearing on the merits.

## I

[¶ 2] In July 1993, Miller suffered a work-related injury to his lower back while employed as a carpenter with Real Builders, Inc. of Minot. The Worker's Compensation Bureau, now WSI, accepted Miller's claim and paid associated medical expenses and disability benefits. Between the time of his injury and the order at issue, Miller underwent numerous functional capacity evaluations ("FCE") to determine his ability to return to gainful employment. A March 2001 FCE placed Miller at "a light job classification on a full time basis." In September 2001, WSI notified Miller of its decision to discontinue his benefits effective October 19, 2001. Miller requested reconsideration of WSI's decision and, in November 2001, WSI issued an order denying further benefits to Miller. In the order, WSI stated Miller was employable, without retraining, on a full-time basis, as a telephone solicitor, customer service representative, floor walker, or mail clerk. Miller requested a formal hearing, which was held in December 2002, before a temporary ALJ. The ALJ issued a recommended findings of fact, conclusions of law, and order, in which he concluded Miller was employable only on a part-time basis, could not obtain substantial gainful employment, and WSI's rehabilitation plan had not identified an appropriate rehabilitation option.

[¶ 3] After the hearing, WSI's outside litigation counsel, Lawrence Dopson, wrote a letter to WSI attorney, Tim Wahlin, expressing his concern with the ALJ's recommendation and informing Wahlin of different possibilities that could arise depending on whether WSI adopted or rejected the ALJ's decision. At oral argument, WSI's outside counsel stated this was the normal procedure in these types of cases and he assumed the letter was transferred in some way to Nick Jolliffe, a WSI claims director. A copy of the letter was sent to Miller's counsel, who acknowledged that he received it, but did not respond to it.

[¶ 4] In April 2003, Jolliffe issued WSI's findings, conclusions, and order rejecting the ALJ's recommendations. WSI concluded Miller was employable full time and ineligible for disability benefits after October 19, 2001. Miller appealed to the district court, which affirmed WSI's order. The district court concluded that the difference between the ALJ's recommended decision and WSI's order was based on a difference in the weight and credibility given to the evidence. The district court concluded that Miller had received a fair hearing.

[¶ 5] On appeal, Miller claimed WSI failed to identify the first appropriate rehabilitation option and that he was denied a fair hearing due to improper ex parte communications. This Court temporarily remanded for an evidentiary hearing regarding the alleged improper ex parte communications. *Miller*, 2004 ND 155, 684 N.W.2d 641. The ALJ found that five relevant communications took place, four of which were ex parte and none of which were improper. Miller argues the agency failed to record pre-decision oral ex parte communications, hid the existence of written ex parte communications, and maintains that impermissible ex parte communications took place.

## II

[¶ 6] Ex parte communications in administrative proceedings are those that are "without notice and opportunity for all parties to participate in the communication." N.D.C.C. § 28–32–37(1). For administrative proceedings under the North Dakota Administrative Agencies Practice Act, ch. 28–32, N.D.C.C., certain ex parte communications are permitted while others are prohibited as improper. N.D.C.C. § 28–32–

37. Section 28–32–37(1), N.D.C.C. provides:

*Except as provided in subsections 2 and 4 or unless required for the disposition of ex parte matters specifically authorized by another statute, an agency head or hearing officer in an adjudicative proceeding may not communicate, directly or indirectly, regarding any issue in the proceeding, while the proceeding is pending, with any party, with any person who has a direct or indirect interest in the outcome of the proceeding, with any other person allowed to participate in the proceeding, or with any person who presided at a previous stage of the proceeding, without notice and opportunity for all parties to participate in the communication.*

(Emphasis added). Subsection 2 of § 28–32–37, N.D.C.C. provides:

When more than one person is the hearing officer in an adjudicative proceeding, those persons may communicate with each other regarding a matter pending before the panel. An agency head or hearing officer *may communicate with or receive aid from staff assistants if the assistants do not furnish, augment, diminish, or modify the evidence in the record.*

(Emphasis added). Subsection 4 of § 28–32–37, N.D.C.C. provides:

In an adjudicative proceeding conducted by a hearing officer other than the agency head, counsel for the administrative agency and the agency head, without notice and opportunity for all parties to participate, may communicate and consult regarding the status of the adjudicative proceeding, discovery, settlement, litigation decisions, and other matters commonly communicated between attorney and client, to permit the agency head to make informed decisions. This subsection does not apply after recommended findings of fact, conclusions of law, and orders have been issued, except counsel for the administrative agency and the agency head may communicate regarding settlement and negotiation after recommended findings of fact, conclusions of law, and orders have been issued.

[¶ 7] The ALJ found that five relevant communications took place, four of which were ex parte and none of which were improper. The ALJ divided the communications into two categories: those occurring before issuance of ALJ Temanson's recommended decision (pre-decision); and those occurring after issuance of ALJ Temanson's recommended decision (post-decision).

[¶ 8] The ALJ concluded the three communications which occurred prior to issuance of the recommended decision were not improper ex parte communications because they were authorized by N.D.C.C. § 28–32–37(4).

[¶ 9] The three pre-decision communications were authorized by N.D.C.C. § 28–32–37(4) because they occurred prior to the ALJ's recommended decision. "Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears, but any words explained in this code are to be understood as thus explained." N.D.C.C. § 1–02–02. "Words in a statute are to be understood in their ordinary sense, that is the meaning an ordinary person could get from reading the section." *State v. Velasquez*, 1999 ND 217, ¶ 4, 602 N.W.2d 693. We will not read into the statute a requirement that any communications made prior to the decision which were not improper ex parte communications at that time, but which would be improper ex parte communications if they were made after the decision, must be disclosed after the ALJ's

decision. The statute does not require that communications which were not improper ex parte communications before the decision must subsequently be disclosed after the decision has been made. Rather, the statute allows these communications prior to the decision but does not allow these communications to take place once the decision is made. These three communications were not improper ex parte communications.

[¶ 10] Of the two post-decision communications, one, the draft findings of fact, conclusions of law, and final order to substitute for the ALJ's decision, was found to not be an improper ex parte communication because it fell under the provisions of N.D.C.C. § 28–32–37(2).

[¶ 11] This leaves one final post-decision communication, the letter written by WSI's outside counsel, mistakenly addressed to WSI's inside counsel instead of to Nick Jolliffe. Here, the ALJ found that it does not make any difference whether the outside counsel's letter was addressed to the inside counsel or to Nick Jolliffe. We do not agree.

[¶ 12] At the time of remand, Miller had established that WSI's outside litigation counsel, Dopson, had written a letter to WSI's inside claims counsel, Wahlin, expressing his concerns with the ALJ's recommended findings of fact, conclusions of law, and order. *Miller*, 2004 ND 155, ¶ 3, 684 N.W.2d 641. At oral argument, outside litigation counsel Dopson told this Court he assumed his letter was transferred to the WSI claims director and decision-maker, Jolliffe. *Id.* A copy of the letter from Dopson to Wahlin was sent to Miller's counsel. *Id.* There was no evidence in the record indicating whether the letter was transmitted to the decision-maker, Jolliffe, or whether the letter was discussed between inside counsel, Wahlin, and the decision-maker, Jolliffe.

[¶ 13] Following the evidentiary hearing on remand, the ALJ found that Jolliffe as claims director for WSI was responsible for reviewing the recommended findings of fact, conclusions of law, and order issued by the ALJ, and issuing WSI's final order upon the rehearing. The ALJ also found that Jolliffe, as claims director, was the "agency head" within the meaning of N.D.C.C. § 28–32–37 for the decisions made by WSI for its final order upon a rehearing. The ALJ additionally found that Wahlin was the inside counsel assigned to Miller's case and Dopson was the outside counsel for Miller's case.

[¶ 14] Generally, when a recommended findings of fact, conclusions of law, and order are completed by the ALJ assigned to a hearing, the Office of Administrative Hearings sends the ALJ's decision, together with the hearing file, to Jolliffe. A copy of the ALJ's decision is also sent to the injured worker or his counsel and to WSI. Jolliffe then reviews the ALJ's decision and sends it to an administrative assistant in WSI's legal department, who holds the file until a letter is received by Jolliffe from outside counsel commenting on the decision. When the letter from outside counsel is received by Jolliffe, it is delivered along with the hearing file and the ALJ's decision to inside counsel assigned to the case for review.

[¶ 15] Here, on remand, the ALJ found that, although there is no evidence of what was done with the Miller file specifically, there is no reason to think it was handled other than in accordance with WSI's customary practice. The ALJ found that, although customarily the letter from outside counsel commenting on the ALJ's recommended decision would be written to the decision-maker, in this case, it was mistakenly addressed to WSI's inside counsel. The ALJ found that outside

counsel intended his comments to be communicated to the decision-maker. The ALJ found that although the letter was addressed to Wahlin, the inside counsel, it was likely redirected to Jolliffe, reviewed by him, and after his review, sent to WSI's legal department and placed in Miller's file.

[¶ 16] After reviewing Miller's file, Wahlin, inside counsel, drafted findings of fact, conclusions of law, and a final order rejecting the ALJ's decision for Jolliffe's review. The ALJ found that, typically, when a draft is sent to the decision-maker, outside counsel's letter commenting on the ALJ's decision is included. On remand, the ALJ found no evidence that Wahlin furnished, augmented, diminished, or modified the evidence of record for the preparation of the draft decision on Miller. In this case, Jolliffe somehow indicated his approval of the draft and returned the draft to the legal department for preparation of the final order. When the final order was completed, Jolliffe's signature was applied "electronically" and copies were sent to the parties and the Office of Administrative Hearings.

[¶ 17] Under N.D.C.C. § 28–32–37 of the Administrative Agencies Practice Act:

1. Except as provided in . . . an agency head or . . . may not communicate, directly or indirectly, regarding any issue in the proceeding, while the proceeding is pending, with any party, with any person who has a direct or indirect interest in the outcome of the proceeding, with any other person allowed to participate in the proceeding, . . . without notice and opportunity for all parties to participate in the communication.

[¶ 18] The clear intent of this law is that Dopson, as outside counsel for WSI and as the person who litigated this proceeding, may not communicate with the WSI agency head, Jolliffe, without notice and an opportunity for Miller to respond. The law prohibits such communications without notice whether "direct or indirect." *Merriam Webster's Collegiate Dictionary* 634–35 (11th ed.2005), defines "indirect" as "deviating from a direct line or course: roundabout."

[¶ 19] In this case, the ex parte communication between outside counsel, Dopson, and the decision-maker, Jolliffe, occurred indirectly when the letter from Dopson addressed to inside counsel, Wahlin, was redirected to the decision-maker, Jolliffe, and again included with the draft decision sent from Wahlin to Jolliffe without notice and an opportunity for Miller to respond.

[¶ 20] The ALJ concluded on remand that because the letter from Dopson to Wahlin was copied to Miller's counsel the communication was not improper ex parte. While it is true that the communication between Dopson and Wahlin was not improper ex parte, it does not address the communication that occurred when the letter was provided to the decision-maker Jolliffe. It is that communication from Wahlin to Jolliffe, without notice and an opportunity for Miller to be heard, that is the improper ex parte communication. The communication of outside counsel's letter to the decision-maker, Jolliffe, was without the knowledge or participation of Miller or his counsel.

[¶ 21] The ALJ relies on *Lawrence v. ND Workers Comp. Bureau,* 2000 ND 60, ¶ 20, 608 N.W.2d 254, for his conclusion there was no improper ex parte communication. However, the ALJ's interpretation allows that communication which is prohibited directly to be done indirectly.

[¶ 22] In *Lawrence,* our Court harmonized N.D.C.C. § 65–01–16(8) and provisions in chapter 28–32, now codified at N.D.C.C. § 28–32–37(1), prohibiting ex parte communications. *Lawrence,* 2000

ND 60, ¶ 20, 608 N.W.2d 254. As previously pointed out, N.D.C.C. § 28–32–37(1) prohibits direct and indirect communications between outside WSI counsel and the agency head without notice and opportunity to be heard while the proceeding is pending. Section 65–01–16(8), N.D.C.C., authorizes: "In reviewing recommended findings, conclusions, and orders, the organization may consult with its legal counsel representing it in the proceeding." In *Lawrence,* our Court concluded all consultations that take place under N.D.C.C. § 65–01–16(8) cannot be improper ex parte because of N.D.C.C. ch. 28–32. *Lawrence,* 2000 ND 60, ¶ 20, 608 N.W.2d 254. This Court in *Lawrence* did not sanction providing a letter from outside counsel to the decision-maker without notice to the claimant and his counsel. *See id.* Miller and his counsel had no notice that the letter addressed to inside counsel would be provided to the decision-maker and had no opportunity to be heard by the decision-maker on the contents of that letter.

[¶ 23] In *Lawrence,* this Court recognized the strong policy reasons for prohibiting ex parte communications between an attorney who represented WSI at the adjudicative hearing and the agency decision-maker:

"One of the fundamental premises inherent in the concept of an adversary hearing, particularly if it is of the evidentiary type, is that neither adversary be permitted to engage in an ex parte communication concerning the merits of the case with those responsible for the decision. . . . It is difficult to imagine a more serious incursion on fairness than to permit the representative of one of the parties to privately communicate his recommendations to the decision makers. To allow such activity would be to render the hearing virtually meaningless."

*Id.* at ¶ 16 (quoting *Camero v. United States,* 179 Ct.Cl. 520, 375 F.2d 777, 780–81 (1967)).

[¶ 24] The crux of this case is that a letter from Dopson commenting on and supplementing the evidence was provided to the decision-maker without providing Miller notice and an opportunity to be heard by the decision-maker. We do not believe that N.D.C.C. § 28–32–37(2), which provides: "An agency head or hearing officer may communicate with or receive aid from staff assistants if the assistants do not furnish, augment, diminish, or modify the evidence in the record," exonerates the communication of Dopson's letter to the decision-maker from the prohibition of ex parte communications.

[¶ 25] We do not dispute that inside counsel, Wahlin, can confer with the decision-maker, Jolliffe, ex parte. However, when Wahlin furnished Jolliffe with a letter he received from outside litigation counsel without the knowledge of the claimant or his counsel, it was an improper communication and notice should have immediately been given to Miller either by Wahlin or Jolliffe. In addition, the letter sent to Wahlin goes beyond the evidence in the record of the case. At the hearing on remand, Dopson testified that his statements in his letter to Wahlin about a physician for Miller were not in evidence. He further testified that it is not typical to communicate to the decision-maker something outside the record. In this case, the letter from Dopson provided by Wahlin to Jolliffe "augmented" or supplemented the evidence in the record. That augmentation is plainly prohibited by N.D.C.C. § 28–32–37(2).

[¶ 26] We review an agency decision in the same manner as the district court under N.D.C.C. § 28–32–46. The ALJ's order is not in accordance with the law and the procedures of the agency have not

afforded the claimant, Miller, a fair hearing. Outside counsel can communicate with the agency head while an adjudicative proceeding is pending only if notice and opportunity to be heard is provided to the claimant.

■ [¶ 27] On remand, Jolliffe must be disqualified from participation in WSI's decision. Section 28–32–37(7), N.D.C.C., provides:

> If necessary to eliminate the effect of an ex parte communication received in violation of this section, an agency head or hearing officer in an adjudicative proceeding who receives the communication may be disqualified, upon good cause being shown in writing to the hearing officer or to the agency. The portions of the record pertaining to the communication may be sealed by protective order issued by the agency.

Dopson's statements in his letter to Wahlin, transmitted to Jolliffe, about a physician of Miller were not in evidence and were highly prejudicial against Miller's position. As a result, we do not believe Jolliffe can participate in further proceedings in this matter.

### III

[¶ 28] Because Miller was never provided with notice that the Dopson letter was provided to the decision-maker, Jolliffe, and considered by him in reversing the ALJ's recommended findings of fact, conclusions of law, and order for judgment, we reverse WSI's order and the district court judgment affirming WSI's order and remand with direction for a rehearing on the merits with the agency head, Jolliffe, disqualified from participation.

[¶ 29]DALE V. SANDSTROM BURT L. RISKEDAHL LAURIE A. FONTAINE.

[¶ 30] The Honorable BURT L. RISKEDAHL, D.J., and the Honorable LAURIE A. FONTAINE, D.J., sitting in place of KAPSNER, J., and CROTHERS, J., disqualified.

VANDE WALLE, Chief Justice, dissenting.

[¶ 31] I respectfully dissent.

[¶ 32] The ALJ concluded that the February 11, 2003 letter from Dopson to Wahlin was not an ex parte communication, regardless of whether it was addressed to Wahlin or Jolliffe. The ALJ noted that a copy of the letter was provided to Miller's counsel. By definition, it was not an ex parte communication under N.D.C.C. § 28–32–37(1) because the communication was shared with Miller's counsel. In *Lawrence v. N.D. Workers Comp. Bureau* this Court harmonized N.D.C.C. § 65–01–16(8) with what is now codified as N.D.C.C. § 28–32–37 and determined that WSI can consult with its outside legal counsel in reviewing an ALJ's recommendation as long as those communications are not ex parte. 2000 ND 60, ¶ 20, 608 N.W.2d 254.[1]

[¶ 33] The other communication at issue was apparently a draft of findings of fact, conclusions of law, and final order for judgment prepared by Wahlin and communicated to Jolliffe. This communication is not contained in the record for this case. The ALJ determined this communication was not an improper ex parte communication because it was permitted under N.D.C.C. § 28–32–37(2) which allows the agency head to "communicate with or re-

---

1. We were told at oral argument that following the Court's decision in *Lawrence,* WSI established a practice of having its outside counsel comment on the ALJ's decision in a letter written to Jolliffe, which was copied to the injured worker or his or her counsel, and accepting any response from the injured worker. This practice has apparently not been incorporated in an administrative rule.

ceive aid from staff assistants if the assistants do not furnish, augment, diminish, or modify the evidence in the record." The ALJ found no evidence Wahlin furnished, augmented, diminished, or modified the evidence. Miller, however, argues Wahlin furnished, augmented, diminished, or modified the evidence by commenting on the credibility of one of Miller's witnesses. Specifically, Miller claims that by commenting on the evidence, Wahlin diminished the evidence with regards to Miller's expert witness. Miller contends the prohibition on furnishing, augmenting, diminishing, or modifying the evidence is a prohibition on commenting on or evaluating the evidence and thus is an improper ex parte communication because Wahlin commented on the evidence.

[¶ 34] The language at issue in N.D.C.C. § 28–32–37(2), when adopted by the North Dakota Legislature in 1991, was taken from the 1981 Model State Administrative Procedure Act as adopted by the National Conference of Commissioners on Uniform State Laws ("NCCUSL"). North Dakota, along with Iowa, Kansas, and Tennessee, adopted the "furnish, augment, diminish, or modify" language. Iowa Code § 17A.17 (2005); Kan. Stat. Ann. § 77–525 (1997); Tenn.Code Ann. § 4–5–304 (1998). None of these states have interpreted the meaning of that provision.

[¶ 35] Most other states have adopted provisions regarding ex parte communications but have not included language about furnishing, augmenting, diminishing, or modifying evidence. Some states have language that is much more permissive than the North Dakota statute that explicitly allows agency heads to receive communications from staff assistants, staff attorneys, or legal counsel. See Ark.Code Ann. § 25–15–209 (2002); 5 Ill. Comp. Stat. 100/10–60 (2005); Me.Rev.Stat. Ann. tit. 5, § 9055 (2002); Nev.Rev.Stat. § 233B.126 (2003); Okla. Stat. tit. 75, § 313 (2002); R.I. Gen. Laws § 42–35–13 (1993); S.C.Code Ann. § 1–23–360 (2005); S.D. Codified Laws § 1–26–26 (2004); Vt. Stat. Ann. tit. 3, § 813 (2003); Wash. Rev.Code § 34.05.455 (2004). Other states have language that is much more restrictive than the North Dakota statute and allows little or no ex parte communication. See Mont. Code Ann. § 2–4–613 (2005); N.M. Stat. Ann. § 12–8–13 (1998); N.C. Gen.Stat. § 150B–35 (2003).

[¶ 36] North Dakota legislative history provides no assistance in interpreting what is meant by furnish, augment, diminish, or modify, nor do the comments of the drafters of the 1981 Model State Administrative Procedure Act. Under the rules of statutory construction staff assistants, including staff attorneys, are allowed to comment on or evaluate the evidence. "Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears, but any words explained in this code are to be understood as thus explained." N.D.C.C. § 1–02–02. "In interpreting a statute, words must be given their plain, ordinary, and commonly understood meaning; and consideration should be given to the ordinary sense of the statutory words, the context in which they are used, and the purpose which prompted their enactment." *County of Stutsman v. State Historical Soc'y*, 371 N.W.2d 321, 327 (N.D.1985). "If the language of a statute is clear and unambiguous, the letter of the statute cannot be disregarded under the pretext of pursuing its spirit because the legislative intent is presumed clear from the face of the statute." *Id.* at 325.

[¶ 37] If the words furnish, augment, diminish, or modify were interpreted to preclude staff assistants from commenting on the evidence, there would be little staff assistants could do under this provision.

If staff assistants were not allowed to comment on evidence, they would be unable to provide guidance to agency heads and this provision would serve no purpose. If the legislature had intended to prohibit staff assistants from commenting on evidence, they could have clearly stated that intention. They did not. Rather, it seems the provision prohibits staff assistants from physically providing or taking away from the evidence given to agency heads.

[¶ 38] This conclusion is supported by the NCCUSL's work and comments on the 2005 Draft Revision of the Model State Administrative Procedure Act. The NCCUSL is currently in the process of revising the 1981 Model Act. The 2005 revision makes changes to the provision on ex parte communications. Section C4–106 of the 2005 revision provides in part:

> (b) communication otherwise prohibited by subparagraph (1) of this section from an employee or representative of an agency that is a party to the hearing officer is permissible in any of the following circumstances:

> (1) The communication is for the purpose of assistance and advice to the presiding officer or agency head from a person who has not served as investigator, prosecutor, or advocate in the proceeding or its preadjudicative stage. An assistant or advisor *may evaluate the evidence in the record but shall not furnish, augment, diminish, or modify the evidence in the record;* (emphasis added).

The comments to the 2005 draft revision explain that this section is taken from the California statute on ex parte communications. The comments further provide: "[t]he California sections address many of the problems that arise in this area, and attempt to distinguish technical, advisory contacts from agency staff to presiding officers or agency heads." The drafters of the Model Act, by inserting the language "may evaluate the evidence in the record," made it clear that staff assistants are allowed to evaluate the evidence. By adding this language to the provision while leaving the prohibition against furnishing, augmenting, diminishing, or modifying the evidence, the drafters have demonstrated that the 1981 language also contemplated allowing staff assistants to evaluate evidence. Although not a part of our statute as originally adopted, by inserting the language allowing staff assistants to evaluate evidence without removing the words furnish, augment, diminish, or modify, the NCCUSL has clarified that furnish, augment, diminish, or modify was not intended to prohibit comments on or evaluation of evidence. Under this reasoning, N.D.C.C. § 28–32–37(2) does not prohibit staff assistants from evaluating evidence.

[¶ 39] The majority opinion holds the improper ex parte communication between Dopson and Jolliffe occurred when Wahlin provided Jolliffe with the February 11, 2003 letter Dopson sent to Wahlin. The majority finds Wahlin improperly augmented the evidence by providing Dopson's letter to Jolliffe and the communication is an improper ex parte communication because Wahlin's act of providing Jolliffe with the letter augmented or supplemented the evidence in violation of N.D.C.C. § 28–32–37(2). Wahlin did nothing to augment the evidence not only because N.D.C.C. § 28–32–37(2) does not prohibit staff assistants such as Wahlin from evaluating or commenting on evidence, but also because Wahlin did not comment on the evidence.

[¶ 40] Miller argues and the majority holds this communication was improper because Wahlin commented on the evidence. Wahlin did not change anything or comment on the evidence, Dopson commented on the evidence in a letter copied

to Miller's counsel pursuant to WSI's customary practice adopted after *Lawrence*, and Wahlin forwarded that letter to Jolliffe because Dopson inadvertently addressed the letter to Wahlin instead of Jolliffe. The letter containing Dopson's comments on the evidence which was meant for Jolliffe was initially copied to Miller's counsel. Because this procedure has been WSI's standard practice since *Lawrence*, Miller's counsel had notice and an opportunity to respond to the letter as is required by N.D.C.C. § 28–32–37(1). Although Miller's attorney contends he had no reason to respond to Dopson's letter to Wahlin, my experience has been that lawyers are not shy about responding to statements of which they have notice and with which they disagree. And significantly, that same comment made by Dopson in a letter directly addressed to Jolliffe would not, even under the majority's analysis, have been ex parte and Jolliffe would have been free to discuss it with Wahlin. Therefore, the communication from Wahlin to Jolliffe was not an improper ex parte communication.

[¶ 41] GERALD W. VANDE WALLE, C.J.