2016 ND 131

STATE of North Dakota, Plaintiff and Appellee

v.

Benjamin Blake CLAYTON, Defendant and Appellant.

No. 20150357.

Supreme Court of North Dakota.

June 30, 2016.

Caitlyn A. Pierson, Assistant State's Attorney, Ward County State's Attorney's Office, Minot, ND, for plaintiff and appellee.

Eric P. Baumann, Minot Public Defender Office, Minot, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Benjamin Clayton appealed from an amended judgment ordering him to pay $24,897.16 in restitution. We affirm.

I

[¶ 2] According to a police affidavit, officers responding to a reported disturbance observed one man holding another man in a headlock and repeatedly punching his face. The men were identified as Clayton and his father, respectively. As a result of the fight, both men suffered facial injuries. Clayton's father also suffered a broken ankle, which required corrective medical care. After charging Clayton with aggravated assault, the State amended its charge to simple assault and Clayton pled guilty. After the district court entered an according criminal judgment, the State moved to amend the judgment to include restitution of $24,897.16 for medical expenses associated with the ankle injury.

[¶ 3] Clayton objected to this amount and requested a restitution hearing. At the hearing, a hospital administrator testified the documents submitted by the State regarding the medical expenses were accurate. Clayton testified he and his father engaged in a verbal altercation that escalated into a physical altercation. According to Clayton, his father threw the first punch, after which Clayton's father tripped and fell, resulting in the two going to the ground. Once on the ground, Clayton testified he placed his father in a headlock and he assaulted his father. Clayton testified he believed his father's fall, not his own actions, caused the ankle injury. A minor who witnessed the incident also testified Clayton's father threw the first punch and fell to the ground.

[¶ 4] After the hearing, the district court found: "Clayton and his [father] were arguing. The argument grew heated, and Clayton apparently threw the first

punch. The two ended up rolling on the ground, and Clayton's father suffered the injury to his ankle." In its order, the court rejected Clayton's assertion the ankle injury occurred prior to his assault because parsing when or how the injury occurred relative to the assault was infeasible. The court concluded the State did not have to prove the ankle injury arose from a specific violent act on the part of Clayton; rather, it sufficed the State established an assault and an injury occurred. According to the court, Clayton did not establish something other than his actions caused the ankle injury. Accordingly, the court granted the State's motion and amended the criminal judgment to include a restitution award of $24,897.16.

II

[¶ 5] Clayton argues the district court acted outside its statutory authority by ordering restitution for the ankle injury. Unless inappropriate under N.D.C.C. § 12.1–32–08(1)(a)–(c), a "court, when sentencing a person adjudged guilty of criminal activities that have resulted in pecuniary damages, in addition to any other sentence the court may impose, shall order that the defendant make restitution to the victim or other recipient as determined by the court...." N.D.C.C. § 12.1–32–08(1). Restitution is limited to those damages "directly related to the criminal offense and expenses actually incurred as a direct result of the defendant's criminal action." N.D.C.C. § 12.1–32–08(1)(a). This direct relationship requires "an immediate and intimate causal connection between the criminal conduct and the damages or expenses for which restitution is ordered." *State v. Pippin*, 496 N.W.2d 50, 53 (N.D.1993); *but see State v. Steinolfson*, 483 N.W.2d 182, 184 (N.D.1992) (allowing restitution for damages not directly related to the defendant's criminal conduct

when specifically provided for within the defendant's plea agreement). "[T]he State has the burden in a restitution hearing to prove the amount of restitution by a preponderance of the evidence." *State v. Nelson,* 2015 ND 301, ¶ 6, 872 N.W.2d 613 (quoting *State v. Gill,* 2004 ND 137, ¶ 7, 681 N.W.2d 832).

[¶ 6] "This Court's review of a restitution order is limited to whether the district court acted within the limits set by statute, which is similar to an abuse of discretion standard." *Id.* (quoting *State v. Tupa,* 2005 ND 25, ¶ 3, 691 N.W.2d 579.) "A district court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law." *Id.* (quoting *Tupa,* at ¶ 3).

[¶ 7] On appeal, Clayton primarily argues the State did not meet its burden of proof regarding his assault directly resulting in the ankle injury. Although not explicitly stating so, the district court implicitly found Clayton's assault directly resulted in the ankle injury. With his argument, Clayton challenges the sufficiency of evidence supporting the court's factual finding. Whether an injury directly resulted from a defendant's criminal conduct is a question of fact. *Cf. Miller v. Diamond Res., Inc.,* 2005 ND 150, ¶ 10, 703 N.W.2d 316 (noting questions of causation are questions of fact). Under N.D.R.Civ.P. 52(a)(6), we may not set aside a factual finding unless the finding is clearly erroneous. "[A] finding of fact is clearly erroneous only if it is induced by an erroneous view of the law or, although there is some evidence to support it, on the entire record we are left with a definite and firm conviction a mistake has been made." *Marsden v. Koop,* 2010 ND 196, ¶ 8, 789 N.W.2d 531 (quoting *McAllister v.*

*McAllister,* 2010 ND 40, ¶ 13, 779 N.W.2d 652).

[¶ 8] On this record, we are not left with a firm and definite conviction the district court erred in finding Clayton's assault resulted in the ankle injury. At the restitution hearing, Clayton admitted to punching his father multiple times and causing facial injuries. Clayton also testified he and his father violently skirmished on the ground prior to Clayton placing his father in a headlock. On this testimony, the ankle injury is consistent in nature with what could be expected to arise from an altercation and assault of this nature. Although the State presented no direct evidence or testimony to this effect, the testimony presented at the restitution hearing, taken with the facts supporting Clayton's guilty plea, was sufficient to infer Clayton's criminal conduct of assaulting his father resulted in the ankle injury. With this evidence, we are not left with a definite and firm conviction the district court erred in concluding Clayton's assault directly resulted in his father's ankle injury. The district court's finding to that effect was not clearly erroneous.

[¶ 9] Clayton further argues the district court's finding was clearly erroneous because it contrasted his uncontradicted testimony. At the hearing, Clayton testified to his belief his father broke his ankle falling to the ground, which, according to Clayton, occurred prior to the assault. While the State did not present contradictory testimony, the district court was not obligated to accept Clayton's testimony as fact. *In re Estate of Clemetson,* 2012 ND 28, ¶ 19, 812 N.W.2d 388 (stating: "[t]estimony may be uncontradicted, but not credible. A trier of fact need not accept undisputed testimony."). The district court placed little, if any, weight on Clayton's testimony, concluding it to be unsubstantiated speculation. On appeal, we will not

reweigh evidentiary value accorded to testimony. *State v. Rufus*, 2015 ND 212, ¶ 6, 868 N.W.2d 534. The State's failure to present evidence or testimony rebutting Clayton's testimony did not necessarily render the district court's finding clearly erroneous.

[¶ 10] Clayton also argues the district court impermissibly placed the burden on him to disprove the existence of a direct relationship between his criminal conduct and the ankle injury. As discussed above, the burden of proof regarding restitution rests with the State. This burden consists of two elements: "the burden of going forward with the evidence and the burden of persuasion." *Helbling v. Helbling*, 541 N.W.2d 443, 445 (N.D. 1995). "When the party with the burden of proof establishes a prima facie case, 'the burden of going forward with the evidence shifts ... to the defendant' ... [and the] party will prevail unless the opposing party offers 'proof to the contrary.'" *Id.* at 446 (quoting *Midland Oil and Royalty Co. v. Schuler*, 126 N.W.2d 149, 152–53 (N.D. 1964)). To make a showing of proof to the contrary, the defendant must present evidence sufficient to equalize "the weight of the plaintiff's evidence." *Midland Oil*, 126 N.W.2d at 153. By requiring evidence or testimony rebutting the inference of a direct relationship between his criminal conduct and the ankle injury, the district court did not shift the burden of proof onto Clayton. Rather, after considering the facts supporting Clayton's guilty plea, the court shifted the burden of going forward, requiring Clayton to offer proof to the contrary regarding how the injury occurred, which he did not do after only offering his speculation. The court did not err in requiring Clayton to present evidence regarding the lack of a direct relationship between his criminal conduct and

the ankle injury after the State presented evidence sufficient to support the plea.

[¶ 11] As a final matter, Clayton argues the district court erred in awarding restitution because his criminal conduct occurred subsequent to the ankle injury. In support of this argument, Clayton cites other cases, most pertinently *State v. Steinolfson*, 483 N.W.2d 182 (N.D.1992). In *Steinolfson*, Steinolfson pled guilty to leaving the scene of an accident. *Id.* at 183. The district court ordered Steinolfson to pay restitution for the victim's medical expenses and for damages to the victim's vehicle, which Steinolfson agreed to pay as a condition of his plea agreement. *Id.* In dicta, we suggested a direct relationship between criminal conduct and an injury does not exist when the criminal conduct occurred subsequent to the injury. *Id.* at 184. Because Steinolfson committed the crime of leaving the scene of an accident after causing the damages for which the State sought restitution, we suggested the district court's restitution award would have been erroneous had Steinolfson not agreed to pay restitution as a condition of his plea agreement. *Id.* at 185.

[¶ 12] *Steinolfson* is distinguishable. In *Steinolfson*, the damages for which restitution was ordered unquestionably occurred prior to the commission of the criminal conduct. The clear demarcation between the commission of the criminal conduct and the injury for which restitution was sought in *Steinolfson* is not present here. Whereas Steinolfson could not have left the scene of the accident without first causing the damages for which restitution was sought, Clayton could have assaulted his father prior to the ankle injury. By all accounts, the implicated altercation occurred quickly and violently. When precisely the ankle injury occurred relative to Clayton assaulting his father in this melee may never be known.

To require the State to establish when an injury occurred on a blow-by-blow, punch-by-punch basis in heat of the moment situations such as this would all but foreclose the State's ability to obtain restitution. The direct relationship necessary for restitution, though requiring an immediate causal connection, does not require absolute certainty the criminal conduct caused the injury. On this record, the district court received sufficient evidence and testimony to infer Clayton's criminal conduct directly resulted in the ankle injury. The district court did not act outside the scope of its statutory authority by ordering restitution for the ankle injury.

### III

[¶ 13] We do not address the other arguments raised because they are either unnecessary to this decision or are without merit. We affirm the amended criminal judgment.

[¶ 14] DALE V. SANDSTROM, DANIEL J. CROTHERS, LISA FAIR McEVERS and CAROL RONNING KAPSNER, JJ., concur.