# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2020 ND 121

State of North Dakota,                                    Plaintiff and Appellee

v.

James Lee McGowen,                                    Defendant and Appellant

## No. 20190225

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Douglas A. Bahr, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Kiara C. Kraus-Parr, Grand Forks, ND, for defendant and appellant.

Dennis H. Ingold, Assistant State's Attorney, Bismarck, ND, for plaintiff and appellee.

# State v. McGowen
## No. 20190225

**Crothers, Justice.**

[¶1]   James McGowen, a/k/a James McGowan, appeals from the amended criminal judgment finding him guilty of two counts of simple assault on a corrections officer and ordering $1,855.31 in restitution. We affirm.

I

[¶2]   On February 22, 2019, McGowen was brought from a holding cell at the Burleigh-Morton County Detention Center into the booking area. Detention officer Behrens asked McGowen booking questions. McGowen became agitated and angry. Correctional officers Psyck and Beine walked around the corner to assist, and Psyck attempted to restrain McGowen with handcuffs. Psyck felt something hit him in the face and believed McGowen punched him. In order to restrain McGowen, Beine tackled McGowen and Psyck. McGowen continued to attack Psyck as they fell to the ground. On the ground McGowen continued to flail and swing punches.

[¶3]   McGowen was charged with two counts of simple assault on  corrections officers Psyck and Beine. A jury found McGowen guilty on both counts. Restitution was left open for 60 days. McGowen appealed the criminal judgment. The State moved to amend the criminal judgment to include $1,855.31 in restitution. The case was remanded to the district court for a restitution hearing, which was held on September 9, 2019. The State called a paralegal at Workforce Safety & Insurance (WSI). She testified she did not determine whether WSI would pay for the officers' injuries or approve the payments for the officers' medical treatments. The State requested a continuance to secure  testimony of the individual at WSI who made  decisions about WSI's payments for the officers' injuries. McGowen objected to the continuance. The district court continued the first hearing. After a second hearing on September 26, 2019, and testimony from another witness at WSI, the district court ordered restitution of $1,855.31.

[¶4] McGowen argues evidence was insufficient to convict him, and the district court abused its discretion by continuing the restitution hearing, and by ordering $1,855.31 in restitution.

## II

[¶5] McGowen argues evidence was insufficient to sustain his convictions. The State argues it presented sufficient evidence at trial for the jury to convict McGowen. We affirm both counts of simple assault on a corrections officer.

[¶6] "The appellate standard of review for a claim of insufficiency of the evidence is well established. A defendant challenging the sufficiency of the evidence on appeal 'must show that the evidence, when viewed in the light most favorable to the verdict, reveals no reasonable inference of guilt.'" *State v. Mohammed*, 2020 ND 52, ¶ 5, 939 N.W.2d 498 (citing *State v. Jacobson*, 419 N.W.2d 899, 901 (N.D. 1988)). "This Court's role is 'to merely review the record to determine if there is competent evidence that allowed the jury to draw an inference "reasonably tending to prove guilt and fairly warranting a conviction."'" *Id*. (quoting *State v. Matuska*, 379 N.W.2d 273, 275 (N.D. 1985)). "The Court does not weigh conflicting evidence or judge the credibility of witnesses." *Mohammed*, at ¶ 5, (citing *State v. Brandner*, 551 N.W.2d 284, 286 (N.D. 1996)).

[¶7] Section 12.1-17-01, N.D.C.C., provides the requirements for simple assault. In pertinent part it states:

> "1. A person is guilty of an offense if that person:
> a. Willfully causes bodily injury to another human being; or
> . . . .
> 2. The offense is:
> a. A class C felony when the victim is a peace officer or correctional institution employee acting in an official capacity, which the actor knows to be a fact; . . . ."

The criminal code defines "willfully" as "if he engages in the conduct intentionally, knowingly, or recklessly." N.D.C.C. § 12.1-02-02(e). N.D.C.C. § 12.1-02-02, defines intentionally, knowingly, or recklessly as:

"a. 'Intentionally' if, when he engages in the conduct, it is his purpose to do so.
b. 'Knowingly' if, when he engages in the conduct, he knows or has a firm belief, unaccompanied by substantial doubt, that he is doing so, whether or not it is his purpose to do so.
c. 'Recklessly' if he engages in the conduct in conscious and clearly unjustifiable disregard of a substantial likelihood of the existence of the relevant facts or risks, such disregard involving a gross deviation from acceptable standards of conduct, except that, as provided in section 12.1-04-02, awareness of the risk is not required where its absence is due to self-induced intoxication."

"Bodily injury" is defined as "any impairment of physical condition, including physical pain." N.D.C.C. § 12.1-01-04(4).

[¶8] "The defendant bears the burden of showing the evidence reveals no reasonable inference of guilt when viewed in the light most favorable to the verdict." *State v. Demarais*, 2009 ND 143, ¶ 7, 770 N.W.2d 246. "A conviction rests upon insufficient evidence only when no rational fact finder could have found the defendant guilty beyond a reasonable doubt after viewing the evidence in a light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor." *State v. Crissler*, 2017 ND 249, ¶ 10, 902 N.W.2d 925 (citing *State v. Knowels*, 2003 ND 180, ¶ 6, 671 N.W.2d 816 (internal citations and quotation marks omitted).

A

[¶9] Psyck testified that when Beine put a hand on McGowen's shoulder to handcuff him McGowen came at him and attacked him. He also testified, "At one point, I believe [he] punched me in the face. So very, very aggressive behavior. I mean, he was trying to hurt me." Psyck was asked, "Why do you say you believed he punched you in the face?" He answered, "There was a lot of movement, a lot of things going on in a very short period of time and through the course—through the course of it, other things hurt a lot worse than getting punched in the face." Ms. Lawyer also asked, "Okay. So you felt something hit your face?" Psyck responded, "Yes." Psyck also testified he pushed McGowen into the wall and attempted to restrain McGowen. Then Beine tackled

3

McGowen and both of them landed on top of Psyck. Psyck testified, "he was attacking me as we were getting—as we were falling over." He also stated he "landed face first, little on my side, but I landed on my elbow, my elbow and my shoulder." He also testified that once on the ground he believed McGowen was still attempting to throw punches at him, and he tried to cross his arms around McGowen's head and neck so McGowen could not punch him.

[¶10] Psyck testified he had pain in his hips, right leg, left and right shoulders, left elbow, face, and head and neck, and he was wearing the same uniform he was wearing in court.

[¶11] Beine testified McGowen had his arms inside of his shirt out of his sleeves to stay warm, and as they walked towards McGowen he put his arms back into the sleeves and clenched his fists and "took a bladed stance." Beine described "bladed stance" as when "[y]ou put one foot forward and you kind of at an angle towards someone so you can—it's like a fighting stance." Beine also testified McGowen started making comments similar to, "I can see you coming up on me. Like you don't want to do that."

[¶12] Beine testified he reached for McGowen's arm to turn him so Psyck could handcuff him and bring him to the detox cell to cool off. Beine testified when the handcuffs came out McGowen put his head down and charged at Psyck. He testified McGowen ran into Psyck and "he started swinging and trying to throw punches." After the three individuals were on the floor, officer Beine testified McGowen continued to struggle and "he was still trying to swing I think . . . . Like I would hold his arms and his legs and he would just fight every place we tried to put it."

[¶13] Behrens testified she ran over and "saw the Defendant assaulting Officer Dave [Psyck]." Ms. Lawyer asked, "And how was he doing that?" She testified, "He was trying to throw punches and trying to kick and just he wouldn't stop moving his body and Officer Beine was also on top of both of them too. I just saw them struggling." In addition to the testimony, the jury also watched a video of the event.

[¶14] The officers' testimony plus the video provide sufficient evidence for the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction. We affirm the simple assault on Psyck, a corrections officer.

## B

[¶15] In addition to the evidence outlined under Psyck's analysis, Beine testified he was the officer who assisted McGowen to the booking area, he was wearing a tan button-up shirt with his name, a badge, brown pants and black boots, and a patch on the shoulder of the shirt that stated, "Burleigh County Sheriff's Department."

[¶16] Beine testified he had a head injury from the incident which was either from "hitting both of them when I tackled them or catching a swing when we hit the ground. I can't recall. I couldn't tell you." He testified he was transported to the emergency room because when he was trying to write his report he started having headaches and felt dizzy.

[¶17] The officers' testimony plus the video provide sufficient evidence for the jury to infer guilt that McGowen willfully caused bodily injury to Beine, and McGowen knew Beine was a correctional institution employee acting in an official capacity. We affirm.

## III

[¶18] McGowen argues the district court abused its discretion in granting a continuance because it did not do a "good cause" analysis, but rather focused on prejudice to the defendant. McGowen further argues the district court abused its discretion in granting the continuance and reopening evidence because it did not remain neutral. The State argues the district court did not abuse its discretion in granting the continuance because the court employed a reasonable process given the competing interests involved. We conclude the district court did not abuse its discretion when it granted the continuance.

[¶19] "The decision to grant or deny a motion for a continuance rests with the district court." *Everett v. State,* 2008 ND 199, ¶ 25, 757 N.W.2d 530 (citing *State*

*v. Kunkel,* 452 N.W.2d 337, 339 (N.D. 1990)). "We review a district court's decision to grant a continuance under an abuse of discretion standard." *Id.* "A district court abuses its discretion by acting unreasonably, arbitrarily, or unconscionably." *Id.* "When reviewing a trial court's decision on a motion for continuance, an appellate court must look to the particular facts and circumstances of each case as there is no mechanical test for determining whether or not a trial court abused its discretion." *Kunkel*, at 339.

[¶20] Rule 6.1(b), N.D.R.Ct., controls motions for continuance and states:

> "**Other Continuances.** Motions for continuance shall be promptly filed as soon as the grounds therefor are known and will be granted only for good cause shown, either by affidavit or otherwise. Stipulations for continuance will not be recognized except for good cause shown. Every continuance granted upon motion must be to a future date consistent with the docket currency standards for district courts, except for good cause shown."

[¶21] At the first restitution hearing McGowen's counsel, Mr. Balzer, disputed the amounts requested and challenged the lack of medical testimony given. The State responded and argued their witness testified to the date of injury, and that services were approved and reviewed by WSI. The district court inquired, "but what about someone who actually reviewed and approved payment of the claims instead of someone who just added them up at the end?" In response the State asked for a continuance to have that person appear and explained why the witness who testified was chosen. The district court noted that the burden was a preponderance of the evidence and explained its concern that there was no explanation of why WSI made the determinations. The district court then stated, "So, Mr. Balzer, the State has, in essence, based upon the Court's tentative ruling, asked for a continuance to continue to provide factual information. Any objection to that?" Balzer objected and both parties presented arguments. The district court stated, "And so the Court does not feel that the victim should be—lose their right to restitution because the State did not call the witness, and in light of the fact that there is no prejudice that has been shown . . . ." It further stated, "In light of the conflicting interest, I am

going to continue this matter but I'm going to ask it be rescheduled as soon as possible and that the State needs to bring any witness that's relevant at that time to have enough information. But I—in the detail I do want it to be rescheduled as soon as possible so that Mr. McGowen is able to pursue his current appeal without delay."

[¶22] The court balanced the defendant's prejudice from delay of his current appeal against WSI's constitutional right as a victim to seek restitution. The district court provided a reasoned explanation for why it granted the State's motion for a continuance, and its decision was not arbitrary, unreasonable, or capricious, or a misinterpretation or misapplication of the law. Therefore, the court did not abuse its discretion in granting the State's motion for a continuance.

IV

[¶23] McGowen argues the district court abused its discretion in awarding restitution of $1,855.31 because the injuries were not a direct result of McGowen striking Psyck or Beine, and Psyck's shoulder was injured because Beine tackled him and not from any criminal action by McGowen. The State argues the district court did not abuse its discretion in ordering McGowen pay $1,855.31 in restitution.

[¶24] The district court concluded the State established by a preponderance of the evidence that $1,855.31 in restitution should be ordered. We agree.

[¶25] "We review a district court's order for restitution made pursuant to N.D.C.C. § 12.1-32-08 to determine whether the court acted within the limits set by the statute." *State v. McAllister*, 2020 ND 48, ¶ 33, 939 N.W.2d 502 (citing *State v. Strom*, 2019 ND 9, ¶ 3, 921 N.W.2d 660). "This is similar to our abuse of discretion standard." *Id.* "Under § 12.1-32-08(1), the district court shall order restitution when it determines the defendant's 'criminal activities' have caused a victim 'pecuniary damages.' Restitution must be limited to damages that are 'directly related to the criminal offense and expenses actually incurred as a direct result of the defendant's criminal action.'" *Id.* "This direct relationship requires an immediate and intimate causal connection between

7

the criminal conduct and the damages or expenses for which restitution is ordered." *Id.* (quoting *State v. Clayton*, 2016 ND 131, ¶ 5, 881 N.W.2d 239). "The determination of whether damages are directly related to a defendant's criminal conduct is a question of fact for the court to decide." *Id.* (citing *Clayton*, at ¶ 7). "We will not set aside a court's finding of fact in a restitution hearing unless it is clearly erroneous." *Id.*

[¶26] "Article I, § 25(1)(n), N.D. Const., provides victims '[t]he right to full and timely restitution in every case and from each offender for all losses suffered by the victim as a result of the criminal or delinquent conduct.'" *McAllister*, 2020 ND 48, ¶ 32, 939 N.W.2d 502. "Section 12.1-32-08(1), N.D.C.C., allows the district court to order a defendant to pay restitution in a criminal case." *Id.* "We have said N.D. Const. art. I, § 25(1)(n) does not change the restitution amount a district court may order under § 12.1-32-08." *Id.* (citing *State v. Kostelecky*, 2018 ND 12, ¶ 12, 906 N.W.2d 77). "Harmonizing these two provisions, we have concluded 'a victim is entitled to be made whole through a reasonable restitution amount based on the entirety of his or her actual losses.'" *Id.*

[¶27] "The 'reasonable damages sustained by the victim' must be 'limited to those directly related to the criminal offense and expenses actually incurred as a direct result of the defendant's criminal action.'" *State v. Rogers*, 2018 ND 244, ¶ 24, 919 N.W.2d 193 (citing *State v. Carson*, 2017 ND 196, ¶ 6, 900 N.W.2d 41). "This Court found that 'directly related' and 'direct result' require that there 'must exist an immediate and intimate causal connection between the criminal conduct and the damages or expenses for which restitution is ordered.'" *Rogers*, at ¶ 24 (citing *State v. Pippin*, 496 N.W.2d 50, 53 (N.D. 1993)).

[¶28] In *State v. Clayton*, 2016 ND 131, ¶ 12, 881 N.W.2d 239, we stated:

> "When precisely the ankle injury occurred relative to Clayton assaulting his father in this melee may never be known. To require the State to establish when an injury occurred on a blow-by-blow, punch-by-punch basis in heat of the moment situations such as this would all but foreclose the State's ability to obtain restitution.

The direct relationship necessary for restitution, though requiring an immediate causal connection, does not require absolute certainty the criminal conduct caused the injury. On this record, the district court received sufficient evidence and testimony to infer Clayton's criminal conduct directly resulted in the ankle injury. The district court did not act outside the scope of its statutory authority by ordering restitution for the ankle injury."

[¶29] In *State v. McAllister*, 2020 ND 48, ¶ 37, 939 N.W.2d 502, we concluded, "Because the district court heard testimony indicating the victim was treated for the type of injuries [the defendant] was convicted of causing, we cannot say the court abused its discretion or acted outside the bounds of the restitution statute."

[¶30] Here, the district court heard testimony indicating the victims were treated for the type of injuries McGowen was convicted of causing. After the incident both Beine and Psyck went to the emergency room. Christine Coffey, claims adjuster for WSI, testified she worked on Beine's and Psyck's claims. She testified, "We review medical records for a compensable work injury along with first reports of injury from both employer and injured worker." She also testified she receives bills from medical facilities to determine whether the amount paid matches the services received. She also testified about the process to ensure that the medical records and bills are associated with that claim of injury and not some other injury. She testified she followed that process in this case by checking that the medical records match the diagnosis codes in the medical documenation and billing formats.

[¶31] In Psyck's case Coffey testified she reviewed the incident report, medical records, and billings for the February 22, 2019 claim. She testified she paid $1,304.87 to Sanford Hospital, and that before she paid the claim she ensured the bills were associated with the February 22, 2019 injury. On cross-examination Coffey testified that officer Psyck also received medical services on May 14, June 12 and June 18, 2019, for continued left-shoulder pain from the February 22, 2019 incident.

[¶32] In Beine's case she testifed she reviewed the first report of injury from the employer, an injury report form from Beine, and emergency room medical

9

records. She also testified WSI paid $550.44 to Sanford Hospital and ensured the costs were related to the claim for the February 22, 2019 incident.

[¶33] On this record, the district court received sufficient evidence to infer McGowen's criminal conduct directly resulted in the injuries and therefore the court acted within the limits set by the statute.

V

[¶34] We affirm the convictions against McGowen and affirm the district court's amended criminal judgment awarding $1,855.31 in restitution.

[¶35]   Daniel J. Crothers
        Gerald W. VandeWalle
        Lisa Fair McEvers
        Jerod E. Tufte
        Jon J. Jensen, C.J.