# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2022 ND 106

State of North Dakota,                                    Plaintiff and Appellee

v.

Terri Kay Yellow Hammer,                          Defendant and Appellant

## No. 20210209

Appeal from the District Court of Morton County, South Central Judicial District, the Honorable James S. Hill, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

Allen M. Koppy, State's Attorney, Mandan, N.D., for plaintiff and appellee.

James R. Loraas, Bismarck, N.D., for defendant and appellant.

**Tufte, Justice.**

[¶1]   Terri Yellow Hammer appeals from an amended criminal judgment awarding restitution in the amount of $193,885.59. On appeal, Yellow Hammer argues the district court erred in ordering restitution for future medical expenses in the amount of $95,000. We affirm.

I

[¶2]   Yellow Hammer pled guilty to criminal vehicular homicide and criminal vehicular injury arising out of a crash with another vehicle. Conan Magilke died at the scene, and Angela Magilke sustained significant injuries.

[¶3]   The district court held a restitution hearing to determine the restitution owed to Angela Magilke. At the hearing, Magilke testified about her medical expenses of $92,580.59 from her first surgery. She also testified that she requires an additional surgery. The State offered as an exhibit a note composed by her physician stating she needs a second surgery that will cost "approximately $95,000." The physician's note was admitted into evidence over Yellow Hammer's objection.

[¶4]   The court ordered restitution in the amount of $193,885.59, which included $95,000 for the cost of the anticipated second surgery. The court found that "as a direct result of the criminal conduct committed by Defendant Yellowhammer," Magilke "has sustained a damage to her clavicle which requires a second surgery." Further, the court found the physician's note estimating the cost of the second surgery "is not speculative" because the physician relied on the cost of her "first surgery which was known to actually cost $92,580.59 as the indicator of the cost of the medically necessary second surgery."

II

[¶5]   Our standard of review for orders of restitution is well established:

When reviewing a restitution order, we look to whether the district court acted within the limits set by statute, which is a standard similar to our abuse of discretion standard. A district court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law.

*State v. Pagenkopf*, 2020 ND 33, ¶ 6, 939 N.W.2d 2. A district court possesses a "wide degree of discretion when determining restitution awards." *Id*. However, "in determining whether or not the district court abused its discretion through misapplication or misinterpretation of the law," this Court applies a *de novo* standard of review. *Id*.

[¶6]   "A district court's award of restitution to a crime victim is made under N.D. Const. art. I, § 25(1)(n) and N.D.C.C. § 12.1-32-08." *Id*. Article I, section 25(1)(n) guarantees to victims "[t]he right to full and timely restitution in every case and from each offender for all losses suffered by the victim as a result of the criminal or delinquent conduct." Section 12.1-32-08(1), N.D.C.C., also provides:

In determining the amount of restitution, the court shall take into account the reasonable damages sustained by the victim or victims of the criminal offense, which damages are limited to those directly related to the criminal offense and expenses actually incurred as a direct result of the defendant's criminal action.

Applying these constitutional and statutory provisions, we have held that "a victim is entitled to be made whole through a reasonable restitution amount based on the entirety of his or her actual losses." *State v. Kostelecky*, 2018 ND 12, ¶ 12, 906 N.W.2d 77.

[¶7]   A court "shall order restitution when it determines the defendant's 'criminal activities' have caused a victim 'pecuniary damages.'" *State v. McAllister*, 2020 ND 48, ¶ 33, 939 N.W.2d 502 (citing N.D.C.C. § 12.1-32-08(1)). The direct relationship between a criminal offense and expenses actually incurred as a result of the defendant's criminal action requires "an immediate and intimate causal connection between the criminal conduct and the damages

or expenses for which restitution is ordered." *State v. Clayton*, 2016 ND 131, ¶ 5, 881 N.W.2d 239. "The determination of whether damages are directly related to a defendant's criminal conduct is a question of fact for the court to decide." *McAllister*, at ¶ 33. "We will not set aside a court's finding of fact in a restitution hearing unless it is clearly erroneous." *Id.*

### III

[¶8] Yellow Hammer argues the district court abused its discretion by misinterpreting the law to allow restitution for future medical expenses. This Court has not considered whether future medical expenses may be awarded as restitution.

[¶9] The district court relied on *Pagenkopf* in concluding that future medical costs may be included in an award of restitution. In that case, the defendant broke into the victim's car and damaged the radio, speedometer glass, and HVAC controls. *Pagenkopf*, 2020 ND 33, ¶ 2 (plurality opinion). Before the restitution hearing, the victim was involved in a car accident, and the insurance carrier paid $2,000 for the damages as a total loss. *Id.* at ¶ 3. The victim had not repaired any of the damages the defendant had caused before the accident occurred, and the insurance carrier had not reduced its payment to account for the damages caused by the defendant. *Id.* at ¶¶ 3–4. At the restitution hearing, the State offered into evidence an estimate to repair the damages done to the victim's car that were caused by the defendant. *Id.* at ¶ 4. "Even though the victim did not incur any expenses for having the damages to her car repaired," this Court held that "she was nonetheless damaged by [the defendant's] vandalism" because "the victim was forced to drive a car with a damaged radio, speedometer glass, and HVAC controls for two months." *Id.* at ¶ 11. We further stated that "[a] victim may sustain damages without having incurred any expense." *Id.* at ¶ 9 (plurality); ¶ 20 (McEvers, J., concurring); ¶ 25 (Crothers, J., dissenting). "The fact that the victim did not incur any actual expenses because she chose not to repair the damages or could not afford to repair the damages is not dispositive of whether she sustained damages and is entitled to restitution." *Id.* at ¶ 11.

[¶10] Although *Pagenkopf* involved property damages, we conclude that its reasoning applies to future medical expenses. *Pagenkopf* established that a victim need not incur an expense in order to be awarded restitution damages. *Id.* at ¶ 9. For example, if the victim has not repaired the damages she suffered prior to the restitution hearing, this does not mean she has not "actually incurred" any damages. This was the case in *Pagenkopf* because the victim did not repair her car before the restitution hearing; however, we held that this did not preclude an award of restitution. *Id.* at ¶¶ 11–12. Therefore, we hold that as long as a victim suffers damages which are a direct result of the defendant's criminal action, the victim may be awarded restitution before actually incurring any expense. *See State v. Falkenberg*, 2021 S.D. 59, ¶ 63, 965 N.W.2d 580 (recognizing that "the court may order Falkenberg to pay restitution for expenses that had already been incurred at the time of sentencing as well as the cost of ascertainable counseling expenses which, although not yet incurred, had been requested by the State at the time of sentencing").

[¶11] Applying the shared rationale of the separate opinions in *Pagenkopf*, we conclude that the court did not err in ordering restitution for Magilke's ascertainable future medical expenses. Although Magilke has not yet incurred the expenses for a second surgery, she testified that this is because she cannot afford the second surgery as a result of her current medical bills. The court found Magilke has suffered a severe clavicle injury requiring multiple surgeries and leaving her uninsurable since the car crash caused by Yellow Hammer's criminal conduct. While Magilke's situation is a bit different from *Pagenkopf* because there the victim had not incurred any expenses and here Magilke has already incurred expenses for the first surgery, the logic of *Pagenkopf* still applies. Therefore, the fact that the second surgery had not been performed prior to the restitution hearing does not preclude an award of restitution.

[¶12] The plain language of our restitution statutes also supports our conclusion that future medical costs may be awarded as restitution damages. The purpose of our restitution laws "is to ensure the victim of a crime is made whole." *Kostelecky*, 2018 ND 12, ¶ 12. Further, through our restitution laws, "a victim is entitled to be made whole through a reasonable restitution amount

4

*based on the entirety of his or her actual losses." Id.* (emphasis added). On the basis of the testimony and evidence received at the restitution hearing, the district court found that a revision surgery is needed to make the victim whole in order to repair the bone that did not heal properly from the first surgery. Because the entirety of Magilke's actual losses includes two surgeries, the court found the restitution amount must include expenses for both surgeries, one already incurred and one found to be necessary and to have an ascertainable future cost. Lastly, the plain language of our crime victims' rights amendment provides victims the "right to *full* and timely restitution . . . *for all losses* suffered by the victim as a result of the criminal or delinquent conduct." N.D. Const. art. I, § 25(1)(n) (emphasis added). The district court found this second surgery is needed to complete the repair of Magilke's clavicle injury, which was a direct result of Yellow Hammer's criminal conduct. Magilke is entitled to full restitution for all losses, which includes expenses for both surgeries. We conclude the court did not abuse its discretion in awarding restitution for the second surgery.

IV

[¶13] Yellow Hammer also takes issue with the form and substance of the physician's note expressing an opinion on the cost of the second surgery. She additionally argues the letter "was not definite as to the amount of future medical expenses or as to whether additional surgery was necessary."

[¶14] The physician's note providing an estimate for the second surgery appears to be from progress notes included in Magilke's medical records. While the informal nature of the physician's note may not satisfy the evidence requirements in order to be admitted as evidence in a trial, the North Dakota Rules of Evidence do not apply to sentencing proceedings. N.D.R.Ev. 1101(d)(3)(D). Therefore, we conclude that the court did not err in admitting the physician's note into evidence at the restitution hearing.

[¶15] Additionally, the court did not err in finding the physician's note was not speculative. The note included an estimate for the second surgery in a fixed amount. It appears the physician based the estimate on the cost of Magilke's

first surgery, which was known to actually cost $92,580.59. The note states that "[p]atient cannot proceed with surgical intervention at this time due to financial reasons." The physician's note in conjunction with Magilke's testimony supports the district court's conclusion that an additional "revision" surgery is needed to repair physical damage to her clavicle, which was injured as a direct result of the criminal conduct of Yellow Hammer. Therefore, on the basis of these facts, the court did not err in awarding restitution for future medical expenses.

V

[¶16] The amended criminal judgment ordering restitution is affirmed.

[¶17] Jon J. Jensen, C.J.
Gerald W. VandeWalle
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte